# EXHIBIT "A"

Fulton County Superior Court
***EFILED***BR
Date: 8/17/2021 3:07 PM
Cathelene Robinson, Clerk

**General Civil and Domestic Relations Case Filing Information Form**

☒ **Superior** or ☐ **State Court of** Fulton _____ **County**

| For Clerk Use Only | |
|---|---|
| **Date Filed** 8/17/2021 **MM-DD-YYYY** | **Case Number** 2021CV353274 |

**Plaintiff(s)**

Salas        Marie

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**

STATEBRIDGE COMPANY, LLC

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

RVFM 11 SERIES LLC

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

ALAN INVESTMENTS III LLC

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

VISION PROPERTY MANAGEMENT LLC

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

DSV SPV3 LLC

**Plaintiff's Attorney** A. Cyclone Covey   **State Bar Number** 190747   **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☒ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____        _____
**Case Number**                 **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Fulton County Superior Court
***EFILED***BR
Date: 8/17/2021 3:07 PM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

**136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303**

## SUMMONS

MARIE SALAS      ) Case
       ) No.:    2021CV353274

      )
      )

**Plaintiff,**     )
      )

**vs.**       )
STATEBRIDGE COMPANY, LLC    )
      )
RVFM 11 SERIES LLC     )
      )

**Defendant**    )
      )
*see addendum for additional defendants   )
      )
      )

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon plaintiff's attorney, whose name and address is:

A. Cyclone Covey
4475 Peachtree Lakes Dr., Berkeley Lake GA 30096
cyclone@kneuppercovey.com
678-596-6008

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This \_\_\_\_ 8/17/2021 _____ day of_____, 20 \_\_\_\_\_

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By_____
            Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

                                       Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

MARIE SALAS,                          |

    Plaintiff,                        |        Civil Action File No.:

                                |

v.                                    |

STATEBRIDGE COMPANY, LLC,             |
RVFM 11 SERIES LLC,                   |
ALAN INVESTMENTS III LLC,             |
VISION PROPERTY MANAGEMENT,           |
LLC, and DSV SPV3 LLC,                |

    Defendants.                       |

## ADDENDUM TO SUMMONS

To the above named defendants:

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon plaintiff's attorney, whose name and address is:

A. Cyclone Covey
4475 Peachtree Lakes Dr., Berkeley Lake GA 30096
cyclone@kneuppercovey.com
678-596-6008

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

Fulton County Superior Court
***EFILED***BR
Date: 8/17/2021 3:07 PM
Cathelene Robinson, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| MARIE SALAS, | |
| Plaintiff, | Civil Action File No.:  2021CV353274 |
| v. | **JURY TRIAL DEMANDED** |
| STATEBRIDGE COMPANY, LLC, | |
| RVFM 11 SERIES LLC, | |
| ALAN INVESTMENTS III LLC, | |
| VISION PROPERTY MANAGEMENT, | |
| LLC, and DSV SPV3 LLC, | |
| Defendants. | |

## VERIFIED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

COMES NOW MARIE SALAS, Plaintiff, by and through counsel, and hereby shows this Honorable Court the following:

### THE PARTIES

1. Plaintiff Marie Salas resides in Barrow County, Georgia.

2. Defendant Statebridge Company LLC is a Colorado LLC. It has registered as a foreign LLC in the State of Georgia. Statebridge may be served via its registered agent in Georgia, which is Incorp Services, 9040 Roswell Road, Suite 500, Atlanta GA 30350.

3. Defendant RVFM 11 Series LLC is a Delaware LLC. Its registered agent is National Registered Agents, Inc., which may be served at 160 Greentree Dr., Suite 101, Kent, DE 19904.

4. Defendant Alan Investments III LLC is a South Carolina LLC. It has registered as a foreign LLC in the State of Georgia. Alan Investments III LLC may be served via its registered agent in Georgia, which is National Registered Agents, Inc., 289 S. Culver St., Lawrenceville, GA 30046.

1

5. Defendant Vision Property Management LLC is a South Carolina LLC. Its registered agent is Alex Szkaradek who may be served at 1111 Belleview St., Suite 107, Columbia SC 29201.

6. Defendant DSV SPV3 LLC is a Delaware LLC. Its registered agent is National Registered Agents, Inc., which may be served at 160 Greentree Dr., Suite 101, Kent, DE 19904.

## JURISDICTION & VENUE

7. This is a civil action for damages and equitable relief. This Court has subject matter jurisdiction pursuant to Ga. Const. Art. VI, § IV, Para. I.

8. Defendant Statebridge Company LLC (i) transacts business in this state, including the transactions involving Plaintiff's house, and, (ii) as alleged below, by its actions has committed multiple torts upon Plaintiff. This Court therefore has personal jurisdiction over Statebridge pursuant to O.C.G.A. § 9-10-91.

9. Defendant Vision Property Management LLC (i) transacts business in this state, including the transactions involving Plaintiff's house, (ii) owned real property in this state at the time the cause of action arose, and (iii) on information and belief, owns other real property in this state. This Court therefore has personal jurisdiction over Vision Property Management pursuant to O.C.G.A. § 9-10-91.

10. Defendant RVFM 11 Series LLC (i) transacts business in this state, including the transactions involving Plaintiff's house, (ii) owned real property in this state, including the property at issue in this case, and (iii) on information and belief, owns other real property in this state. This Court therefore has personal jurisdiction over RVFM 11 Series LLC pursuant to O.C.G.A. § 9-10-91.

11. Defendant Alan Investments III LLC (i) transacts business in this state, including the transactions involving Plaintiff's house, (ii) owned real property in this state, including the

2

property at issue in this case, and (iii) on information and belief, owns other real property in this state. This Court therefore has personal jurisdiction over Alan Investments III LLC pursuant to O.C.G.A. § 9-10-91.

12. Defendant DSV SPV3 LLC (i) transacts business in this state, including the transactions involving Plaintiff's house, (ii) owned real property in this state, including the property at issue in this case, and (iii) on information and belief, owns other real property in this state. This Court therefore has personal jurisdiction over DSV SPV3 LLC pursuant to O.C.G.A. § 9-10-91.

13. Venue in this Court is proper under O.C.G.A. §§ 14-11-1108; 14-2-510 as Statebridge's registered agent lies in Fulton County. Venue as to the other defendants is proper under O.C.G.A. § 9-10-93.

## SUMMARY OF ACTION

14. Ms. Salas has fallen victim to a scheme that Defendants have perpetrated throughout the country. The scheme begins by obtaining title to run-down properties that are often uninhabitable or that, while technically habitable, have significant problems with their structure, electrical, plumbing, HVAC, or other major systems. The scheme then involves marketing the property as a "Lease to Own" opportunity. The marketing includes claims that owners can invest in a home with the flexibility of a lease but with the benefit of owning their home at the expiration of the contract. The customers are saddled with expensive repairs to their homes, which they willing to make because they are under the mistaken impression that they are investing in a home in which they have significant equity. These customers believe that their effort in repairing and upgrading the home will afford them a long-term financial benefit because they will own their home at the expiration of the term. In reality, however, the

contracts that customers are told to sign gives them virtually no equity in the property, and their investment in the house benefits only the perpetrators of the scheme.

15. Attorneys General in multiple states including New York, Pennsylvania, and Wisconsin has brough actions against defendants Vision Property Management and DSV SPC3 for this exact scheme. These defendants have also settled private lawsuits for the same claims in multiple states including Ohio, Michigan, and Georgia.

16. Ms. Salas fell victim to the same scam, believing she was investing in a home that she would eventually own. She made extensive repairs and upgrades to the property worth tens of thousands of dollars. Instead of building equity, however, she has been making improving and making payments on a property under a contract that provided her virtually no equity.

17. In their dealings with Ms. Salas, the defendants completely ignored state and federal laws concerning the lease and sale of residential real property, mortgage disclosure requirements, and fair business practices.

18. To add insult to injury the defendants failed to make the required tax payments allowing the property to go to a tax foreclosure sale. Although the defendants no longer have title to the property, they have continued to insist that she make payments to them. They have threatened her with eviction that they could not pursue and caused her and her family a great deal of emotional distress and worry about whether they would be able to continue to live in the house that they have made their home over the past seven years.

## FACTUAL BACKGROUND

19. Marie Salas entered into a contract concerning the property at 258 East 5th Avenue, Winder GA 30680 (the "House"). This contract was labeled *Lease Purchase Agreement*. A true and correct copy is attached as Exhibit 1. Ms. Salas was also provided additional documents when

she signed the contract, which are attached as Exhibit 2. Except for these documents Ms. Salas

was given no other documents or disclosures at any time before she executed the contract.

20. At the time Ms. Salas executed the contract the cash sale list price of the House was $33,500.

21. Prior to signing the contract Ms. Salas had extensive conversations with employees of Vision

Property Management. These employees told Ms. Salas that this contract would allow her to

invest in the House, that her payments would go to the equity in the House, and that she would

be able to convert her contract to a traditional mortgage.

22. Defendant RVFM 11 Series LLC executed the contract with Ms. Salas. The contract states that

it was prepared by defendant Vision Property Management LLC.

23. RVFM 11 Series LLC had engaged Vision Property Management LLC to act as RVFM's agent

in administering the terms of the contract.

24. After executing the contract, on approximately September 1, 2014, Ms. Salas took possession

of the House.

25. When she took possession of the House Ms. Salas realized that it needed extensive repairs,

including a complete overhaul of the flooring, plumbing, kitchen cabinets, and landscaping.

She also had to replace many windows, repair the foundation, repair sheetrock in multiple

rooms, and replace the front door. Over time Ms. Salas invested her money to buy the materials

needed to repair the problems and she and her family invested their own time and expertise to

make the repairs.

26. Ms. Salas made the monthly payments required by the contract for years under the belief that

she was building significant equity in the House.

27. On approximately October 27, 2015 defendant RVFM 11 Series LLC transferred the property

to defendant Alan Investments III LLC.

5

28. On information and belief the same parties control both RVFM 11 Series LLC and Alan Investments III LLC. The transfer of the House from RVFM to Alan was not an arms-length transaction. Ms. Salas was never notified of the transfer of ownership from RVFM to Alan.

29. On approximately July 31, 2017, defendant Alan Investments III LLC transferred the property to defendant DSV SPV3 LLC.

30. On information and belief the same parties control both Alan Investments III LLC and DSV SPV3 LLC. The transfer of the House from Alan to DSV SPV3 LLC was not an arms-length transaction.

31. In approximately March 2021 DSV SPV3 LLC engaged Statebridge to service its contract with Ms. Salas. At that time Statebridge served as a debt collector and became Ms. Salas's point of contact for all issues relating to the administration of Ms. Salas's contract with the other defendants.

## FIRST CAUSE OF ACTION –BREACH OF CONTRACT

32. RVFM 11 Series LLC signed the contract with Ms. Salas and was the original party obligated to perform.

33. By accepting a transfer of the deed to the House, Alan Investments III LLC accepted the contractual obligations of RVFM 11 Series LLC.

34. By accepting a transfer of the deed to the House, DSV SPV3 LLC accepted the contractual obligations of RVFM 11 Series LLC and Alan Investments III LLC.

35. Defendants RVFM 11 Series LLC, Alan Investments III LLC, and DSV SPV3 LLC failed to make the required property tax payments on the House. As a result the property was put into tax foreclosure and purchased by Nicola Holdings LLC at a tax sale.

36. RVFM 11 Series LLC, Alan Investments III LLC, and DSV SPV3 LLC breached their obligation to lease the House to Ms. Salas the moment the House was sold to a third party. Because they did not own the property they were legally unable to lease the property to Ms. Salas thereby breaching the contract.

37. RVFM 11 Series LLC, Alan Investments III LLC, and DSV SPV3 LLC breached their contractual obligation to properly escrow and pay property taxes on the House.

38. The contract provides that "upon expiration of this agreement … this lease shall convert to a Seller Financed Contract." Vision Property Management told Ms. Salas in 2021 that it was no longer responsible for the contract and that all elements of the contract, including obtaining seller financing, would be handled by Statebridge. Statebridge Company informed Ms. Salas that it was not in the business of financing homes and that she would need to get a loan from a third party. These statements were an anticipatory breach by RVFM 11 Series and its successors (the other Defendants) because they were statements made by their agents that indicated that the owners would not provide Ms. Salas seller financing as provided in the contract.

39. RVFM 11 Series and its successors have further breached the contract because they do not own the House so it is impossible for them to provide Ms. Salas seller financing.

40. The contract provides that RVFM 11 Series and its successors would escrow $35 of Ms. Salas's monthly payment for casualty insurance.

41. Ms. Salas suffered property damage to the Home when a tree fell on the Home during a severe storm.

42. Ms. Salas contacted Vision Property Management for assistance in filing an insurance claim on the Home because of the tree.

43. Vision Property Management refused to share any insurance information with Ms. Salas. They told her the damage was not covered and would not assist her in submitting a claim. Vision Property Management told Ms. Salas she had to pay for repairing the damage herself, which Ms. Salas did.

44. On information and belief, neither Vision Property Management nor the other defendants purchased any insurance covering the Home.

45. The failure to purchase insurance for the Home was a breach of contract.

46. The failure to provide Ms. Salas information to permit her to file an insurance claim for the damage to her house was a breach of the implied covenant of good faith and fair dealing inferred by Georgia law.

### PRAYER FOR RELIEF FOR FIRST CAUSE OF ACTION

47. Ms. Salas seeks the following relief against Defendants RVFM 11 Series LLC, Alan Investments III LLC, DSV SPV3 LLC, and Vision Property Management LLC for their breach of contract:

    a. Rescission of the contract and equitable restitution to Ms. Salas in an amount to be determined by the Court;

    b. Plaintiff's costs and expenses in bringing this action; and

    c. Such other relief as the Court deems proper.

**SECOND CAUSE OF ACTION – EQUITABLE RESCISSION OF CONTRACT**

48. Ms. Salas's contract with the defendants is void under public policy and per-se unconscionable because the contract was a veiled mortgage, but none of the Defendants were licensed as required by O.C.G.A. § 7-1-1002.

49. In the event that defendants claim that their contractual obligation to provide seller financing to Ms. Salas is indefinite and unenforceable then the contract should be voided because a material term in the agreement upon which Ms. Salas relied is impossible. The resulting contract would be substantively unconscionable as it would leave Ms. Salas in an impossible position to find third-party financing that she could not obtain.

50. Ms. Salas's contract with the defendants is void under public policy and per-se unconscionable because, as set forth below, it was consummated in violation of Georgia's Fair Business Practices Act (Fourth Cause of Action), the Georgia Fair Lending Act, the Federal Truth in Lending Act, and the Federal Real Estate Settlement Procedures Act.

**UNCONSCIONABILITY DUE TO VIOLATION OF GEORGIA'S FAIR LENDING ACT**

51. At the time Ms. Salas signed the contract the list cash price of the House was $33,500.

52. The contract provided that, upon the expiration of the seven-year term her total purchase price would be $59,900.

53. Subtracting the cash sale price of $33,500 from the total purchase of $59,900 price yields a difference of $26,400, which would be the accumulated interest over the term of the contract. The annual accumulated interest is therefore $3,771.42 per year ($26,400/7). The annual interest rate charged for the home was therefore 11.26% (3,771.42/33,500).

54. O.C.G.A. § 7-6A-2 provides that a loan is a "high-cost home loan" if the loan exceeds the threshold in 12 C.F.R. § 226.32. This Federal Regulation applies when "[t]he annual

9

percentage rate at consummation will exceed by more than 8 percentage points for first-lien loans … the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor." 12 C.F.R. § 226.32(a)(1)(i). Ms. Salas's contract is dated September 1, 2014. Therefore the applicable date is for determining Treasury securities is August 15, 2014. The daily yield for 7-year treasuries on August 15, 2014 was 1.99%. The interest rate charged to Ms. Salas therefore exceeded the threshold required by Georgia Law to be considered a high-cost home loan because her effective rate was 11.26% and the threshold on September 1, 2014 was 9.99% (8+1.99).

55. Defendants Vision Property Management and RVFM 11 Series LLC did not receive certification from a counselor with a third-party nonprofit organization approved by the United States Department of Housing and Urban Development or the Georgia Housing and Finance Authority that Ms. Salas received counseling on the advisability of the loan transaction. Because Ms. Salas was in a high-cost home loan such failure was a violation of OCGA § 7-6A-5(7).

56. Defendants Vision Property Management and RVFM 11 Series LLC did not include a notice on the contract with Ms. Salas that that contained a notice that the contract was subject to special rules under the Georgia Fair Lending Act. Such failure was a violation of OCGA § 7-6A-5(15).

57. Defendants Vision Property Management and RVFM 11 Series LLC structured the contract as a "lease" in an attempt to avoid the provisions of the Georgia Fair Lending Act in violation of OCGA § 7-6A-6(d).

**UNCONSCIONABILITY DUE TO VIOLATION OF THE FEDERAL TRUTH IN LENDING ACT**

10

58. Since 2014, Vision Property Management LLC extended more than five loans each year primarily for personal, family, or household purposes that were secured by a dwelling.

59. The other Vision Defendants held title to the homes and also entered into these transactions as a counter-party to the contracts.

60. The Vision Defendants extended credit to Ms. Salas in a consumer credit transaction. Vision Property Management was the initial payee, the loan was payable in more than four installments, and the extended credit was subject to a finance charge. In connection with these transactions, the Vision Defendants acquired a security interest in residential real property owned by Ms. Salas and used as her principal dwelling.

61. The Vision Defendant's transactions with Ms. Salas are subject to TILA, 15 U.S.C. § 1601 *et seq.* as she is a consumer who entered into a residential mortgage loan as defined by the TILA.

62. The Vision Defendants' transaction with Ms. Salas meets the definition of a credit sale under the TILA, in Ms. Salas agreed to pay a sum equal to or in excess of the value of the House, would become the owner of the House upon compliance with the contract, and was not terminable without penalty.

63. The Vision Defendants failed to make any of the disclosures required by TILA to Ms. Salas, including the finance charge, annual percentage rate, the total number of payments required to own the home, the amount of the purchase price that would be owed at the end of the contract, or the fact that a security interest in the home was taken.

64. None of the Vision Defendants conducted a reasonable, good faith evaluation of Ms. Salas's ability to afford her obligations under the contract, including her other debts and the obligation to make all repairs necessary to maintain the House in a habitable condition.

65. Upon information and belief, none of the Vision Defendants conducted a reasonable evaluation of Ms. Salas's expected residual income or back-end debt-to- income ratio.

66. Ms. Salas loan was a "high-cost mortgage" under 15 U.S.C. § 1602(bb)(1)(A) the annual percentage rate for the transactions exceeded the average prime offer rate by more than 6.5%. The average prime offer rate for seven-year mortgages on September 1, 2014 was 3.52% and Ms. Salas's rate was 11.26%.

67. The Vision Defendants violated the TILA and its implementing regulation, 12 C.F.R. § 1026 ("Regulation Z"), by (i) failing to verify Ms. Salas's ability to pay through documented income and assets, (ii) upon information and belief, failing to obtain a written appraisal from a licensed or certified appraiser in connection with Ms. Salas's loans, (iii) failing to maintain an escrow account for Ms. Salas's homeowner's insurance, (iv) failing to furnish additional disclosures that must be provided three days in advance of the consummation of a high-cost loan transaction, 15 U.S.C. § 1639(b), and (v) failing to ensure that consumers received counseling from an independent HUD-approved housing counselor prior to consummation, 12 C.F.R. § 1026.34(a)(5).

## UNCONSIONABILITY DUE TO VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

68. Ms. Salas's contract is a federally related mortgage loan for purposes of RESPA because it was made by a creditor as defined by TILA who makes more than $1 million per year in loan transactions.

69. Ms. Salas is considered a borrower under RESPA based on the terms of the contract.

70. Vision Property Management is a servicer as defined by RESPA because it services the covered loan transaction at issue.

71. Vision Property Management mishandled the servicing of the escrow accounts of Ms. Salas in at least the following ways: collecting funds that exceeded the amount needed to pay required property taxes, failing to conduct an annual escrow analysis and calculate the proper escrow payment, failing to provide annual escrow statements to Ms. Salas, failing to return surplus escrow funds to Ms. Salas, and failing to make timely payments out of escrow.

72. On information and belief in failing to make timely disbursements out of the escrow account for property taxes, Vision Property Management caused penalties, fees, and interest to accrue and passed those additional penalties, fees, and interest on to Ms. Salas.

73. Vision Property Management violated at least the following duties and requirements of RESPA and Regulation X, 12 C.F.R. §§ 1024.17 and 1024.34: the duty to perform escrow analysis and calculate proper escrow payments, the duty to provide annual escrow statements, the duty to timely refund escrow surpluses, and the duty to make timely payments out of escrow.

### PRAYER FOR RELIEF FOR SECOND CAUSE OF ACTION

74. Ms. Salas seeks the following relief for the unconscionable contract:

    a. Rescission of the contract and equitable restitution awarded to Ms. Salas in an amount to be determined by the Court;

    b. Plaintiff's costs and expenses in bringing this action; and

    c. Such other relief as the Court deems proper.

### THIRD CAUSE OF ACTION – FRAUD, CONSPIRACY TO COMMIT FRAUD, AIDING & ABETTING FRAUD

75. Defendants Vision Property Management LLC, RVFM 11 Series LLC, Alan Investments III LLC, and DSV SPV3 LLC were owned by common owners at the time the fraud was conceived, and on information and belief, they continue to be owned by common owners.

13

76. Vision Property Management LLC acted as the agent for RVFM 11 Series LLC, Alan Investments III LLC, and DSV SPV3 LLC and therefore as the principals of their agent they are liable for Vision's actions.

77. Vision Property Management LLC intended, prior to the execution of the contract with Ms. Salas, to collect her tax escrow payments and keep them for itself and its principals. It did not intend to make property tax payments for the duration of the lease as the contract intended.

78. This intention is shown by (a) the fact that Vision and the other defendants actually did not make the tax payments on the House, allowing it to go into tax foreclosure; (b) Vision Property Management LLC and its owners have performed this same scam against multiple other victims including specifically Jesse White in Wisonsin,[1] Rhonda Henderson in Michigan, Roberta Faulks in Michigan, and Rachel Church in Michigan,[2] making these actions a pattern and practice of fraud; and (c) former Vision Property Management employees have confirmed that the company habitually refused to pay state taxes for properties that they leased to their victims and required its employees to "find a loophole" to avoid paying taxes owed.[3]

79. Vision Property Management intended for Ms. Salas to rely on its misrepresentations to induce her into entering into the contract.

80. Vision Property Management LLC, RVFM 11 Series LLC, Alan Investments III LLC, and DSV SPV3 LLC conspired to commit the fraud by transferring the property between themselves and agreeing to use escrowed funds for purposes other than paying property tax on the Home.

---

[1] https://www.jsonline.com/story/news/investigations/2017/03/03/no-title-no-worry-llc-no-longer-owns-house-files-evict-milwaukee-family/98550996/
[2] https://www.nclc.org/images/pdf/litigation/Vision_Plaintiff_Profiles.pdf
[3] https://www.wearegreenbay.com/news/local-news/rent-to-own-former-vision-property-management-employees-speak-out/

81. There was a common design between Vision Property Management LLC, RVFM 11 Series LLC, Alan Investments III LLC, and DSV SPV3 LLC to commit the fraud against Plaintiff. This common design can be inferred from the nature of the fraud and their act of transferring ownership of the property between them, the common ownership, relationship, and interests of the defendants which is further alleged in the Action to Pierce the Corporate Veil (Fifth Cause of Action below), which is incorporated herein.

82. Ms. Salas actually relied on the misrepresentations of Vision Property Management and the other defendants that Vision would escrow and timely remit her tax payments to Barrow County, in that she did not make such payments herself because she thought they had already been paid. Such reliance was reasonable because the contract provided that $85 of her monthly payment would be applied to real estate tax payments.

83. Ms. Salas discovered the fraud when she received a tax foreclosure notice in the mail from Barrow County in October 2020.

84. Ms. Salas called Vision Property Management about the tax notice. The representative she spoke to advised her to hold and "escrow" all payments she would have otherwise made to Vision Property Management until the tax issue was resolved.  The representative falsely indicated that Vision would correct the issue and that Ms. Salas could then pay her escrowed money to Vision without penalty.

85. As a result of the false statements and reassurances by Vision Property Management Ms. Salas took no action to prevent the House from going into tax foreclosure.

86. Once Statebridge became the administrator of Ms. Salas's contract Statebridge agreed to conspire with the other defendants to perpetuate the fraud upon Ms. Salas. This can be inferred by the fact that (i) Statebridge acted as a debt collector for the other defendants even though

none of them were listed owners on the House at the time Statebridge began acting as a debt collector, and (ii) Statebridge's representatives repeatedly falsely told Ms. Salas, over the course of multiple phone calls, between March 2021 and July 2021, that they knew about the tax issue, that the issue was resolved, that she did not need to worry about it, and that she simply needed to continue making her payments.

87. Statebridge knew that its clients, Vision Property Management and DSV SPV3 LLC, did not own the House but Statebridge had conspired with its clients to continue collecting payments from Ms. Salas even though they knew they had no legal right to do so.

88. In addition to conspiring and directly committing fraud itself, Statebridge aided and abetted the fraud by Vision Property Management and DSV SPV3 LLC when Statebidge made its false statements to Ms. Salas. Statebridge's statements were an effort to conceal the fraud and collect additional payments. They were made with the intention of deceiving Ms. Salas to believe that her possession of the House was not in jeopardy.

89. Statebridge knew of the underlying fraud its clients, the other Defendants, which was to collect Ms. Salas's payments even though they had no right to do so and to lie to her about the ownership and tax status of the property. Statebridge provided substantial assistance to advance the commission of the fraud by the other defendants making its false statements that the tax issue was resolved and that Ms. Salas should simply continue to make her monthly payments to avoid eviction.

90. Ms. Salas relied on Statebridge's false statements by continuing to make monthly payments to Statebridge. And because of Statebridge's false statements, even after discovering that the property had been sold at a tax foreclosure sale, Ms. Salas refrained from investigating how

16

she might go about obtaining clear title to the House or whether she should continue making

monthly payments to Statebridge.

### PRAYER FOR RELIEF FOR THIRD CAUSE OF ACTION

91. Ms. Salas seeks the following relief for Defendants' fraud:

    a.  A determination that each Defendant is jointly and severally liable for damages that Ms. Salas sustained as a result of the fraud;

    b.  Rescission of the contract as she was fraudulently induced to enter into the contract;

    c.  Actual damages Ms. Salas incurred in an amount to be determined at trial, including emotional distress damages;

    d.  Punitive damages;

    e.  Plaintiffs' reasonable attorneys' fees pursuant to O.C.G.A. § 13-6-11;

    f.  Plaintiff's costs and expenses in bringing this action; and

    g.  Such other relief as the Court deems proper.

### FOURTH CAUSE OF ACTION – VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT

92. Vision Property Management, acting as an agent for RVFM 11 Series LLC, advertised to Ms. Salas their lease-to-own contracts as ones under which Ms. Salas would own her home at the expiration of the contract. This was not true.

93. Vision Property Management, acting as an agent for RVFM 11 Series LLC advertised to Ms. Salas that by executing their contract she could build her credit. This was not true as her timely payments were never reported to any credit agency.

94. Vision Property Management, acting as an agent for RVFM 11 Series LLC advertised to Ms. Salas that it would collect and escrow her tax payments and make timely property payments

on the House. This was not true as the defendants did not pay the taxes and allowed the home to go into tax foreclosure.

95. These false representations, and all other false representations as alleged in the third cause of action above (Fraud), which are incorporated herein, were intentional representations that the services that Vision Property Management and RVFM 11 Series LLC offered had benefits that they did not have in violation of O.C.G.A. § 10-1-393(b)(5). They were also generally unfair and deceptive in violation of O.C.G.A. § 10-1-393(a).

96. As alleged in the third cause of action above (Fraud) and the sixth cause of action below (FDCPA), both of which are incorporated herein, Statebridge Company made multiple false and deceptive statements to Ms. Salas, including without limitation, that the tax foreclosure issue had been resolved, that she was in danger of eviction if she did not pay outstanding amounts, and that she had previously agreed to a payment plan that she had not agreed to. These statements were unfair and deceptive in violation of O.C.G.A. § 10-1-393(a).

**PRAYER FOR RELIEF FOR FOURTH CAUSE OF ACTION**

97. Ms. Salas seeks the following relief against Defendants Vision Property Management, RVFM 11 Series LLC, and Statebridge Company LLC for their intentional violation of Georgia's Fair Business Practices Act:

　　　a. Actual damages in an amount to be determined at trial, including emotional distress damages;

　　　b. Trebling of actual damages as provided by O.C.G.A. § 10-1-399(c);

　　　c. Plaintiffs' reasonable attorneys' fees;

　　　d. Plaintiff's costs and expenses in bringing this action; and

　　　e. Such other relief as the Court deems proper.

## FIFTH CAUSE OF ACTION – ACTION TO PIERCE THE CORPORATE VEIL (ALTER EGO)

98. Defendants Vision Property Management LLC, RVFM 11 Series LLC, Alan Investments III LLC, DSV SPV3 LLC all have common ownership. (The foregoing defendants shall be referred to as the "Vision Defendants.")

99. The owners of the Vision Defendants created each entity to allow the entity to avoid legal liability for the misdeeds of the other entities they owned and controlled.

100.    The owners of the Vision Defendants did not treat each entity as a distinct company. Instead all the Vision Defendants were simply conduits through which they all transacted the same business.   Examples include (i) transfers of deed to the House between various Vision Defendants that were not arms-length transactions, (ii) the marketing and sale of the House by Vision Property Management LLC and the collecting of payments by Vision Property Management LLC on behalf of all the other Vision Defendants, and (iii) the failure of the Vision Defendants to maintain separate governance.

101.    There is such unity of interest and ownership between the Vision Defendants that separate entities do not functionally exist.

102.    It would be inequitable to allow the individual Vision Defendants to avoid liability for the actions of each of the other Vision Defendants because their corporate structure is designed to enable the fraud by transferring ownership between one another with the ultimate goal of preventing victims from recovering their houses, because it is designed to frustrate creditors, and further designed to prevent discovery and to move properties into related entities to prevent victims from recovering their ownership or equity rights.

## PRAYER FOR RELIEF FOR FIFTH CAUSE OF ACTION

19

103.    Because the Vision Defendants maintain a unity of ownership and interest between them, Ms. Salas seeks the following relief:

    a.    A determination that each of the Vision Defendants are the alter ego of the other and that they should be jointly and severally liable for the damages they have caused Plaintiff.

### SIXTH CAUSE OF ACTION – VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

104.    Ms. Salas is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

105.    Within one year immediately preceding the filing of this complaint, Defendant Statebridge attempted to collect from Ms. Salas payments under the contract. This was a financial obligation that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

106.    On approximately June 26, 2021, again on June 27, 2021, and in multiple ensuing conversations Statebridge representatives falsely told Ms. Salas that the property taxes had been paid and that ownership of the property was not in jeopardy in violation of 15 U.S.C. § 1692e.

107.    Throughout the time it was involved with Ms. Salas Statebridge was and continues to be a "debt collector" under 15 U.S.C. § 1692a.

108.    Statebridge acted in an unfair manner toward Ms. Salas in violation of 15 U.S.C. § 1692f by (i) failing to apply her payments immediately to past due amounts instead holding those payments in an "unapplied" status, (ii) asserting she was in default because she failed to make payments to Statebridge even though she was withholding payments as she had previously

been instructed by Vision Property Management to withhold payment until the tax sale was resolved, and (iii) requiring her to make payment via certified funds.

109.   Statebridge violated 15 U.S.C. § 1692e(5) by threatening in writing that if past due payments were not made timely that Statebridge may initiate foreclosure proceedings even though Statebridge's principal (DSV SPV3) did not have title to the House at the time the threat was made.

110.   Statebridge violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692f by falsely and unfairly presenting a payment plan to Ms. Salas and representing to her that she had already agreed to the plan.

111.   Ms. Salas suffered severe emotional distress and mental strain as a result of Statebridge's unfair and false actions. She constantly worried about eviction which exacerbated her symptoms of diabetes, leading to requiring additional insulin and other medication.

## PRAYER FOR RELIEF FOR SIXTH CAUSE OF ACTION

112.   Ms. Salas seeks the following relief for Statebridge Company's violations of the Fair Debt Collection Practices Act:

    a.   Actual damages Ms. Salas incurred in an amount to be determined at trial, including emotional distress damages;

    b.   Statutory Damages of $1,000;

    c.   Plaintiffs' reasonable attorneys' fees;

    d.   Plaintiff's costs and expenses in bringing this action; and

    e.   Such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Ms. Salas demands a trial by jury on all issues that may be resolved by a jury.

Respectfully submitted this 17th day of August 2021.

Attorney for Plaintiff

X. Cyclone Covey
Kneupper & Covey PC
GA. Bar No. 190747
cyclone@kneuppercovey.com
(678) 596-6008

Kneupper & Covey PC
4475 Peachtree Lakes Dr.
Berkeley Lake, GA 30096

22

7. CERTIFICATION OF ACCURACY. The undersigned have reviewed the information above and certify to the best of their knowledge, that the statement they have provided is true and accurate.

Signed, sealed and delivered in the presence of:

RVFM 11 SERIES, LLC

WITNESS
(sign and print) _Cleo H Larson_

BY AUTHORIZED SIGNER
(sign and print) _MICHAEL BRADBERRY_

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

WITNESS  _Marie Salas_
(sign and print)

SIGN HERE →  MARIE SALAS
(sign and print)

WITNESS  _Candace Penn_
(sign and print)

SIGN HERE →  LESSEE(s)
(sign and print)

State of GEORGIA
County of _Barrow_

On this, the _28_ day of _August_, 2014, before me, a Notary Public for said State and County, personally appeared _Marie Salas_ and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal

NOTARY PUBLIC FOR GEORGIA
Printed Name: _____
My commission expires _____
This Instrument Prepared by:

**Isabel Ramirez**
Notary Public
Barrow County, State of Georgia
My comm. expires July 8, 2016

Vision Property Management, LLC
Courtney Chavis
16 Berryhill Road
Columbia, SC 29210

Page 8 of 9

## ATTACHMENT "A" TO THE RESIDENTIAL LEASE WITH OPTION TO PURCHASE
## AGREEMENT

(Dated the 1ST day of SEPTEMBER, 2014, BETWEEN RVFM 11 SERIES, LLC and MARIE SALAS)

## LEGAL DESCRIPTION

PARCEL ID NUMBER: WN12A 022

# EXHIBIT 1

FM 11-102

## RESIDENTIAL LEASE WITH OPTION TO PURCHASE AGREEMENT
### (TRIPLE-NET, BONDABLE LEASE)

This **RESIDENTIAL LEASE WITH OPTION TO PURCHASE AGREEMENT** is entered into on this day **1ST** of **SEPTEMBER, 2014** between **RVFM 11 SERIES, LLC** (hereinafter known as the "LESSOR") and **MARIE SALAS** (hereinafter known as the "LESSEE(s)").

Witnesseth, that if the LESSEE(s) shall first make the payments and perform the covenants hereafter described, the LESSOR hereby covenant(s) and agree(s) to LEASE the property commonly known as **258 EAST 5TH AVENUE** in the County of **BARROW**, the city of **WINDER**, the State of **GEORGIA**, to the LESSEE(s) for the term and covenant(s) set forth herein, and further known and described as follows, to-wit:

SEE ATTACHMENT "A" FOR LEGAL DESCRIPTION OF PROPERTY

The premises, as described above, with all appurtenances, are hereby LEASED to the LESSEE(s) for a term of **84** months. This LEASE shall commence the **1ST** of **SEPTEMBER, 2014**, and shall be paid, at the signing of this agreement, in the following manner: **TWO THOUSAND DOLLARS AND NO CENTS ($2,000.00)** as an option consideration, and **FIVE HUNDRED EIGHT DOLLARS AND NO CENTS ($508.00)** as the monthly lease payment, plus **EIGHTY DOLLARS AND NO CENTS ($80.00)** for real estate taxes (real estate taxes subject to change), plus **THIRTY-FIVE DOLLARS AND NO CENTS ($35.00)** for Casualty and General Liability Insurance (insurance premium subject to change), making the total initial payment **TWO THOUSAND SIX HUNDRED TWENTY-THREE DOLLARS AND NO CENTS ($2,623.00).**

All subsequent monthly payments shall be due on or before the **1ST** day of each month, commencing on the **1ST** of **OCTOBER, 2014** until the term of this agreement has been fulfilled and shall be in the amount of **SIX HUNDRED TWENTY-THREE DOLLARS AND NO CENTS ($623.00)**. This agreement expires on the last calendar day of **AUGUST, 2021**. **THIRTY-SIX DOLLARS AND NINETY-ONE CENTS ($36.91)** of each monthly lease payment, as well as the option consideration paid by the LESSEE(s) shall be credited towards the purchase price of the premises for the extent of this agreement, and shall be considered as non-refundable escrow towards the **PURCHASE PRICE**.

The **PURCHASE PRICE** of the premises, as described above, will be **FIFTY-NINE THOUSAND NINE HUNDRED DOLLARS AND NO CENTS ($59,900.00)**, to be satisfied on or before the expiration of this agreement, should the LESSEE(s) choose to exercise their rights to purchase as described hereinafter.

Upon the expiration of the term of this agreement or before, the LESSEE(s) shall have three options, to-wit:

1. **OPTION TO CONVERT TO SELLER FINANCING:** LESSEE(s) may, if all the requirements and covenants of this agreement have been fulfilled, either upon the expiration of this agreement, or upon the time the total credit(s) paid towards the **PURCHASE PRICE** reaches the amount of 30% of the **PURCHASE PRICE**, whichever comes first, this lease shall convert to a Seller Financed Contract. This conversion shall be documented by a separate instrument. The **PURCHASE PRICE** as set forth in the instrument documenting the conversion to Seller Financing shall be equivalent to the difference of the **PURCHASE PRICE** listed in this agreement minus any/all credit(s) paid towards said **PURCHASE PRICE**.

2. **OPTION TO PURCHASE PREMISES:** LESSEE(s) may, on or before the expiration of this agreement, choose to purchase the above referenced premises for the remainder of the **PURCHASE PRICE** as described above with all credits paid included. Fulfillment of the **PURCHASE PRICE** by the LESSEE(s) shall be treated as a **CASH SALE**, at which time the LESSOR shall provide the LESSEE(s) with a good and sufficient deed, clear of all encumbrances, with exception to any/all encumbrances caused by the action or inaction, whether direct or indirect, of the LESSEE(s), and transfer title of the premises from the LESSOR to the LESSEE(s). This **CASH SALE** shall be documented by a separate instrument.

Page 1 of 9

3. **OPTION TO FORFEIT LEASE:** LESSEE(s) may, on or before the expiration of this agreement, by mutual agreement between LESSOR and LESSEE(s), as evidenced in writing, choose to forfeit their rights to the premises described herein and vacate the premises and all appurtenances within FIVE (5) days of the determined expiration of this agreement. Should the LESSEE(s) choose to forfeit this agreement, all personal property and belongings shall be vacated within FIVE (5) days of the determined expiration of this agreement. Should the LESSEE(s) choose to vacate the premises, any and all improvements that have been built into the property, including but not limited to any/all built in appliances, shall remain with the property and become considered forfeit.

    a. **FAILURE TO VACATE PREMISES:** Should the LESSEE(s) fail to comply with the covenants of OPTION 3 (above), LESSOR shall have the right to evict LESSEE(s) according to the proper judicial process determined by the locality in which the premises is located.

    b. **PERSONAL PROPERTY:** Should the LESSEE(s) elect to choose OPTION 3 (above), any and all of LESSEE(s), their assigns, agents, acquaintances, and/or other personal property remaining in, around, or about the premises or its appurtenances shall be forfeit so far as the FIVE (5) day vacation period has expired.

    c. **CONDITION OF PREMISES:** LESSEE(s) agree that upon the execution of OPTION 3 (above), LESSEE(s) shall vacate premises in the same condition or better as of the execution of this agreement. LESSEE(s) acknowledge that should they vacate the premises in worse condition than at the time of execution of this agreement, any and all appropriate legal action may be sought by LESSOR for restitution.

## NON-PAYMENT, EVICTION, AND LATE FEE NOTIFICATION

    LESSEE(s) acknowledges and understands that if the full amount of the monthly payment described herein has not been received by the end of TEN (10) calendar days after the date it is due, a late charge in the amount of TWENTY-FIVE DOLLARS AND NO CENTS ($25.00) will become due, the total payment and penalty being the amount of SIX HUNDRED FORTY-EIGHT DOLLARS AND NO CENTS ($648.00). Any late fee charged shall not be applied/assumed as credit towards the PURCHASE PRICE.

For each bad check there will be Thirty Dollars ($30.00) bad check fee applied.

    LESSEE(s) acknowledges and understands that in the event of their failure to perform according to the covenants set forth herein, particularly, but not limited to, the full amount of the monthly payment described herein not being received by the end of FIFTEEN (15) calendar days after the date it is due, they may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process.

## AS IS/WHERE IS LEASE NOTIFICATION

    LESSEE(s) acknowledges and understands that the premises referenced herein is LEASED in strictly "AS IS/WHERE IS" condition, and it is mutually agreed, by and between the parties hereto, that the LESSEE(s) is solely responsible for maintaining the premises in a safe and non-hazardous condition during the duration of this agreement, and for bringing the building and premises to a habitable condition, compliant with any and all State, County, and City building and premises codes, within a reasonable period of time not exceeding THREE (3) month(s) of the date of execution of this agreement, and maintaining the premises in a good state of repair during the term of this agreement.

    LESSEE(s) also hereby acknowledges and understands that the LESSEE(s), upon the execution of this agreement, may take possession of the premises referenced herein, but will not occupy or allow to be occupied the stated premises until the building and premises are brought to a habitable condition, compliant with any and all State, County, and City building and premises codes.

LESSEE(s) also hereby acknowledges and understands that the LESSEE(s), upon the execution of this agreement, shall be immediately responsible for payment or alleviation of any encumbrances including, but not limited to, all taxes, assessments and/or impositions (includes such fees as ground rents, city/county miscellaneous fees as they require, property violations and/or fines levied, water/sewer charges, electrical/gas usage charges, garbage fees and property taxes levied, etc.) that may be legally levied or imposed upon said premises that are delinquent or currently due at the execution of this agreement without recourse.

## RIGHT TO INSPECT PREMISES

LESSOR, its employees or agents, shall have the right, after 24 hours of notice to the LESSEE(s), to enter and inspect the premises and all its appurtenances referenced in this agreement at reasonable times for the purpose of inspecting the performance of the LESSEE(s) pertaining to the terms and conditions of this agreement set forth herein. LESSEE(s) hereby agrees to and grants LESSOR such stated rights.

Upon inspection of the premises and all its appurtenances, should LESSOR deem that the terms and covenants of this agreement have not been fulfilled by the LESSEE(s), such as but not limited to maintenance, repair(s), or other reasonable grounds, LESSOR shall have the right to terminate this agreement immediately by written notice to the LESSEE(s), and should it require, the LESSEE(s) may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process. Such termination of this agreement does not entitle the LESSEE(s) to any payments made, whether towards the option consideration or not, to any refund whatsoever. LESSEE(s) hereby agrees to and grants LESSOR such stated rights.

## LESSEE'S RIGHT TO SUB-LEASE

If all the requirements and covenants of this agreement are in full effect, including but not limited to maintaining the premises in a safe and non-hazardous condition during the duration of this agreement, and for bringing the building and premises to a habitable condition, compliant with any and all State, County, and City building and premises codes, LESSEE(s) shall have the right to sub-lease the premises referenced herein upon the mutual agreement to sub-lease said premises, in writing, between the LESSEE(s) and LESSOR. This sub-lease and acknowledgment of sub-lease shall be documented by a separate instrument to be approved by the LESSOR in its sole discretion. LESSEE(s) hereby acknowledges and agrees that the requirements and conditions of this agreement shall take priority, including but not limited to the "AS IS/WHERE IS" clause, over any sub-lease agreement.

Prior to the execution of any sub-lease agreement, LESSEE(s) hereby acknowledges and agrees to provide LESSOR with appropriate contact information for the sub-lessee(s), including but not limited to phone number(s), email address, emergency contacts, and other information that may be required by the LESSOR prior to the execution of the sub-lease.

Upon the execution of any sub-lease between LESSEE(s) and sub-lessee(s), this agreement shall remain in full effect according to the provisions set-forth herein. Upon the event that the requirements and covenants set forth herein are not in full effect including, but not limited to non-payment, LESSEE(s) may be placed in eviction in the pertinent Court of competent jurisdiction pertaining to the county in which the premises is located or other appropriate judicial process, and LESSOR shall have the immediate right to convert the sub-lessee(s) to LESSEE(s) in the former LESSEE(s) stead. This conversion shall be documented by a separate instrument.

## INSURANCE NOTIFICATION

The LESSEE(s) will pay for Casualty and General Liability insurance as a part of their monthly payment. This fee is a Casualty and General Liability Insurance Policy and is not a replacement for renters insurance or other appropriate insurance to be obtained by the LESSEE(s). This policy only covers the LESSOR's liability in this property. Without renters insurance or other appropriate insurance, the LESSEE(s) will still be responsible for damage or loss of personal belongings.

The LESSEE(s) will notify the LESSOR immediately in the event of catastrophic damage to the property. Catastrophic damage shall be defined as any damage requiring over $5,000 to repair.

If the damage to the improvements on the Property is less than fifty (50%) percent of the total value of the improvements, the LESSEE(s) shall be obligated to repair or reconstruct said property. The LESSOR shall apply the proceeds directly to the costs of such repair or reconstruction. The LESSEE(s) shall be liable for any deficiency after application of the insurance money to such costs.

If the damage to the improvements on the Property is in excess of fifty (50%) percent of the total value of the improvements, the LESSEE(s) shall have the option as to whether to repair or reconstruct said property following such casualty loss.

If the LESSEE(s) elects not to repair or reconstruct said property, then the unpaid balance of the PURCHASE PRICE shall at the option of the LESSOR become due and payable forthwith, and the insurance proceeds shall be applied towards the application of such sum, any surplus of the insurance proceeds over and above the LESSEE(s) obligations shall be paid to the LESSEE(s). In the event that the agreement is paid out as a result of the application of the insurance proceeds, the LESSOR shall deliver a deed to the LESSEE(s) and consummate the transaction. In the event the contract is not paid out as a result of the application of the insurance process pursuant to an election not to repair or reconstruct said property after casualty, the proceeds shall be credited to the account of the LESSEE(s) and the LESSEE(s) will continue to make regular payments pursuant to the terms of the agreement until the LESSEE(s) obligations are satisfied and the agreement consummated.

If the LESSEE(s) elects to repair or reconstruct, the insurance proceeds shall be applied by the LESSOR to the costs of such repair or reconstruction, the LESSEE(s) shall submit the building plans to the LESSOR for approval, for which approval shall be granted if the value of the land after the repair or reconstruction will equal or exceed the value of the premises immediately prior to the casualty. If requested by the LESSEE(s), the LESSOR will, after approval of the LESSEE(s) building plans, turn over the insurance proceeds to an insurance trustee for the purpose of paying for the repairs or reconstruction.

Any surplus of insurance proceeds over and above the costs of repair or reconstruction shall be delivered to the LESSEE(s), and any deficiency remaining after application of such proceeds to the costs of repair or reconstruction shall be paid by the LESSEE(s).

*[signature(s) on the following page]*

IN WITNESS WHEREOF, The parties to these presents have hereunto set their hands and seals the day and year first above written.

_____
WITNESS
(sign and print)

SIGN HERE → _____
**MARIE SALAS**
(sign and print)

_____
WITNESS
(sign and print)

SIGN HERE → _____
LESSEE(s)
(sign and print)

State of GEORGIA

County of __Barrow__

On this, the __28__ day of __August__, 2014, before me, a Notary Public for said State and County, personally appeared __Marie Salas__ and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal

_____
NOTARY PUBLIC FOR GEORGIA
Printed Name: ____**Isabel Ramirez**____
My commission expires _____ Notary Public (SEAL)
Barrow County, State of Georgia
My comm. expires July 8, 2016

*************************************************************************

RVFM 11 SERIES, LLC

_____
WITNESS   _LUIS MARIACA_
(sign and print)

_____
BY AUTHORIZED SIGNER
(sign and print) _MICHAEL BRADBERRY_

State of South Carolina
County of __LEXINGTON__

On this, the __2__ day of __SEPT.__, 2014, before me, a Notary Public for said State and County, personally appeared __MICHAEL BRADBERRY__ and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal

_____
NOTARY PUBLIC FOR South Carolina
Printed Name: __Sara Pincelli__
My commission expires __6-1-19__. (SEAL)

State of South Carolina
Notary Public
Sara Pincelli
My Commission Expires 6/1/2019

Page 5 of 9

## LEAD BASED PAINT RIDER AND RISK ASSESSMENT

RIDER TO AGREEMENT DATED the 1ST day of **SEPTEMBER, 2014** between the LESSEE(s) and LESSOR for property located at **258 EAST 5TH AVENUE, WINDER**, County of **BARROW**, State of **GEORGIA**.

The LESSOR and the LESSEE(s) agree that the following additions and/or modifications are hereby made to the above-referenced Contract.

1. AGREEMENT CONTINGENCY. Pursuant to Federal Regulations, the provisions of this Rider must be satisfied before the LESSEE(s) are obligated under this agreement.

2. LEAD WARNING STATEMENT. The LESSOR, as owner of an interest in residential real property on which a residential dwelling was built prior to 1978, is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduce intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The LESSOR, as owner of an interest in residential real property, is required to provide any LESSEE(s) with whom the LESSOR enter into an agreement with any information on lead-based paint hazards from risk assessments or inspections in the possession of the LESSOR and notify the LESSEE(s) of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

3. LEAD HAZARD INFORMATION PAMPHLET. The LESSOR shall deliver to the LESSEE(s) an EPA approved lead-hazard information pamphlet (For example, Protect Your Family From Lead In Your Home). Intact lead-based paint that is in good condition is not necessarily a hazard.

4. LESSOR's DISCLOSURE. (Check all applicable boxes).

(A) Presence of Lead-Based Paint and/or Lead Based Paint Hazards.

(Check either (1) or (2) below).

[ ] (1) Hazards Known. Attached hereto is a statement signed by the LESSOR disclosing the presence of known lead-based paint and/or lead-based hazards at the Property, including but not limited to the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards and the condition of the painted surfaces.

[x] (2) Hazards Unknown. The LESSOR has no actual knowledge of the presence of lead-based paint and/or lead-based paint hazards at the property.

(B) Records and Reports Available to LESSOR. (Check either (1) or (2) below).

[ ] (1) Records Provided. The following is a list of all records and/or reports available to the LESSOR pertaining to lead-based paint and/or lead-based paint hazards at the property.

_____

_____

The LESSOR shall deliver a complete copy of each record and report to the LESSEE(s).

[x] (2) No Records. The LESSOR has no records or reports pertaining to lead based paint and/or lead-based paint hazards at the Property.

Page 6 of 9

**5. RISK ASSESSMENT. (Mark with an X either (A) or (B) below.)**

[ ] (A) LESSEE(s) hereby waive/waives the opportunity to conduct a lead-based paint hazard risk assessment or inspection.

**MARK
EITHER**

[X] (B) This agreement is contingent upon a risk assessment or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards being obtained by the V at the expense of the LESSEE(s) before 5:00 p.m. on the tenth calendar day after full execution of the agreement by all parties (the "Lead Paint Inspection Period"). If the results of such inspection are unacceptable to the LESSEE(s) for any reason whatsoever, the LESSEE(s) shall notify the LESSOR or the attorney of the LESSOR in writing within two business days after the end of the Lead Paint Inspection Period, together with a copy of the inspection and/or risk assessment report. In such case, either party may cancel the agreement upon written notice to the other party or the other party's attorney. If the notice of unacceptable results by the LESSEE(s) is not received by the LESSOR or the attorney of the LESSOR within two business days after the end of the Lead Paint Inspection Period, this Inspection contingency is deemed waived by the LESSEE(s). The definitions in Paragraph 1.B and C of Form 1.1 Contract Rider (1995) shall be used to determine whether or not the notice of unacceptable results by the LESSEE(s) has/have been received by the LESSOR before the end of the Lead Paint Inspection Period. The LESSOR will cooperate with the inspection made by the LESSEE(s) in such fashion as may be reasonably requested by the LESSEE(s). The LESSEE(s) may remove this contingency at any time without cause.

**6. ACKNOWLEDGMENT BY THE LESSEE(s) (initial and date):**

INITIAL HERE → _MS_
_____
Initial       _8-28-14_
              Date

LESSEE(s) has/have received copies of all information, records and/or reports set forth in Paragraph 4 of this Rider or attached to this Contract.

INITIAL HERE → _MS_
_____
Initial       _8-28-14_
              Date

LESSEE(s) has/have received an EPA approved lead hazard information pamphlet.

INITIAL HERE → _MS_
_____
Initial       _8-28-14_
              Date

LESSEE(s) has/have received a 10-day opportunity (or mutually agreed upon period) or has/have waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

*(signature(s) on the following page)*

Page 7 of 9

# EXHIBIT 2

# RVFM 11 SERIES, LLC

16 Berryhill Road
Columbia, South Carolina 29210
Phone: 803-929-1117
Fax: 803-929-1170

**SEPTEMBER 1, 2014**

Dear **MARIE SALAS**:

Please find enclosed the documents pertaining to our Agreement. It will be necessary for you to sign both sets of these documents and have them witnessed in the presence of a Notary Public and have the Notary Public emboss the documents with his/her Notary Seal. After you have signed both sets of the documents, send both of them to us with your certified funds in the amount of **$2,000.00** for the option consideration, plus **$623.00** for the first monthly payment, for a total initial payment of **$2,623.00**. We will sign these documents and send one of the original sets of documents back to you for your records. The check for the initial payment and all future payments should be made payable to:

**VISION PROPERTY MANAGEMENT, LLC**

Please mail all payments to:

VISION PROPERTY MANAGEMENT, LLC
P.O. BOX 488
Columbia, South Carolina 29202

**Within Three (3) months of the contract start date, you will need to send us the proof of the insurance for the building, including liability insurance, listing us as additional insured and a bank statement showing a valid checking or savings account.**

I look forward to receiving these signed documents soon so that you can move into your new home. If you have any questions please call me at 803-929-1117.

Sincerely,

Vision Property Management

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

MARIE SALAS,

    Plaintiff,

v.

STATEBRIDGE COMPANY, LLC,
RVFM 11 SERIES LLC,
ALAN INVESTMENTS III LLC,
VISION PROPERTY MANAGEMENT,
LLC, and DSV SPV3 LLC,

    Defendants.

Civil Action File No.:

**JURY TRIAL DEMANDED**

### VERIFICATION OF COMPLAINT

I, Marie Salas, Plaintiff, verify under penalty of perjury under the laws of the United States and

Georgia, that the foregoing complaint is based upon my personal knowledge, and is true to the

best of my knowledge, information, and belief.

Dated this the 17 day of August, 2021.

Marie Salas

Sworn to and subscribed before me on this the 17 day of August, 2021.

Notary Public

My commission expires: Apr 28 - 2025

JULIET JETER
NOTARY
Comm. Exp.
GEORGIA
Apr. 28, 2025
PUBLIC
BARROW COUNTY, GA

23

Fulton County Superior Court
***EFILED***AR
Date: 9/8/2021 1:08 PM
Cathelene Robinson, Clerk

**AFFIDAVIT OF SERVICE**

**IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA**
**136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303**

| | |
|---|---|
| Marie Salas<br><br>        Plaintiff(s)<br><br>v.<br><br>Statebridge Company, LLC, et al.<br><br>        Defendant(s) | Case No.:2021CV353274<br>Alexander Cyclone Covey, Esq.  190747<br>KNEUPPER & COVEY PC<br>4475 Peachtree Lakes Dr<br>Berkeley Lake, GA 30096<br>(678) 596-6008<br>Client File# Salas v. Statebridge |

The undersigned, being first duly sworn on oath deposes and says: That he/she is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen years, not a party to or interested in the above entitled action and competent to be a witness therein.

That on 8/25/2021 at 11:10 AM at the address of 1209 N Orange St, Wilmington, within New Castle County, DE, the undersigned duly served the following document(s): Summons; Addendum to Summons; Verified Complaint for Damages & Equitable Relief; General Civil and Domestic Relations Case Filing Information Form in the above entitled action upon DSV SPV3 LLC, by then and there personally delivering true and correct set(s) of the above documents into the hands of and leaving same with National Registered Agents, Inc., Registered Agent - By serving Amy McLaren, Intake Specialist.

Physical description of person served: Gender: Female | Race: Caucasian | Age: 35 | Height: 5'6" | Weight: 130 | Hair: Brown

I declare under penalty of perjury under the laws of the state of  that the foregoing is true and correct.

That the fee for this Service is  $ 138.00



_____          8/25/2021

Denorris Britt
Contracted by Nationwide Legal, LLC
901 W. Civic Center Drive, Suite# 190
Santa Ana, CA 92703
(714) 558-2400                    Order #:OC69048
                         Their File Salas v. Statebridge

Copy from re:SearchGA

Fulton County Superior Court
***EFILED***AR
Date: 9/8/2021 1:08 PM
Cathelene Robinson, Clerk

**AFFIDAVIT OF SERVICE**

## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303

Marie Salas

Plaintiff(s)

v.

Statebridge Company, LLC, et al.

Defendant(s)

Case No.:2021CV353274
Alexander Cyclone Covey, Esq.  190747
KNEUPPER & COVEY PC
4475 Peachtree Lakes Dr
Berkeley Lake, GA 30096
(678) 596-6008
Client File# Salas v. Statebridge

The undersigned, being first duly sworn on oath deposes and says: That he/she is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen years, not a party to or interested in the above entitled action and competent to be a witness therein.

That on 8/25/2021 at 11:10 AM at the address of 1209 N Orange St, Wilmington, within New Castle County, DE, the undersigned duly served the following document(s): Summons; Addendum to Summons; Verified Complaint for Damages & Equitable Relief; General Civil and Domestic Relations Case Filing Information Form in the above entitled action upon RVFM 11 Series LLC, by then and there personally delivering true and correct set(s) of the above documents into the hands of and leaving same with National Registered Agents, Inc., Registered Agent - By serving Amy McLaren, Intake Specialist.

Physical description of person served: Gender: Female | Race: Caucasian | Age: 35 | Height: 5'6" | Weight: 130 | Hair: Brown

I declare under penalty of perjury under the laws of the state of  that the foregoing is true and correct.

That the fee for this Service is  $ 213.00



_____                  8/25/2021

Denorris Britt
Contracted by Nationwide Legal, LLC
901 W. Civic Center Drive, Suite# 190
Santa Ana, CA 92703
(714) 558-2400                          Order #:OC69044
                                        Their File Salas v. Statebridge

Copy from re:SearchGA

Fulton County Superior Court
***EFILED***AR
Date: 9/8/2021 1:08 PM
Cathelene Robinson, Clerk

**AFFIDAVIT OF SERVICE**

**IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA**
136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303

Marie Salas

Plaintiff(s)

v.

Statebridge Company, LLC, et al.

Defendant(s)

Case No.:2021CV353274
Alexander Cyclone Covey, Esq.  190747
KNEUPPER & COVEY PC
4475 Peachtree Lakes Dr
Berkeley Lake, GA 30096
(678) 596-6008

Client File# Salas v. Statebridge

The undersigned, being first duly sworn on oath deposes and says: That he/she is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen years, not a party to or interested in the above entitled action and competent to be a witness therein.

That on 9/1/2021 at 12:50 PM at the address of 289 S Culver St, Lawrenceville, within Gwinnett County, GA, the undersigned duly served the following document(s): Summons; Addendum to Summons; Verified Complaint for Damages & Equitable Relief; General Civil and Domestic Relations Case Filing Information Form in the above entitled action upon Alan Investments III LLC, by then and there personally delivering true and correct set(s) of the above documents into the hands of and leaving same with National Registered Agents, Inc., Registered Agent - By serving Linda Banks, Intake Specialist.

Physical description of person served: Gender: Female | Race: Caucasian | Age: 65 | Height: 5'3" | Weight: 135 | Hair: White

I declare under penalty of perjury under the laws of the state of  that the foregoing is true and correct.

That the fee for this Service is  $ 233.00

_____        9/2/2021
Frank James
Contracted by Nationwide Legal, LLC
901 W. Civic Center Drive, Suite# 190
Santa Ana, CA 92703
(714) 558-2400

Order #:OC69045
Their File Salas v. Statebridge

Copy from re:SearchGA

Fulton County Superior Court
***EFILED***AR
Date: 9/8/2021 1:08 PM
Cathelene Robinson, Clerk

**AFFIDAVIT OF SERVICE**

### IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
**136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303**

Marie Salas

Plaintiff(s)

v.

Statebridge Company, LLC, et al.

Defendant(s)

Case No.:2021CV353274
Alexander Cyclone Covey, Esq.  190747
KNEUPPER & COVEY PC
4475 Peachtree Lakes Dr
Berkeley Lake, GA 30096
(678) 596-6008

Client File# Salas v. Statebridge

The undersigned, being first duly sworn on oath deposes and says: That he/she is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen years, not a party to or interested in the above entitled action and competent to be a witness therein.

That on 8/26/2021 at 3:10 PM at the address of 9040 Roswell Rd Ste 500, Atlanta, within Fulton County, GA, the undersigned duly served the following document(s): Summons; Addendum to Summons; Verified Complaint for Damages & Equitable Relief; General Civil and Domestic Relations Case Filing Information Form in the above entitled action upon Statebridge Company, LLC, by then and there personally delivering true and correct set(s) of the above documents into the hands of and leaving same with Incorp Services, Registered Agent - By serving Marisa Evans, Intake Specialist.

Physical description of person served: Gender: Female | Race: Caucasian | Age: 30 | Height: 5'6" | Weight: 135 | Hair: Blonde

I declare under penalty of perjury under the laws of the state of  that the foregoing is true and correct.

That the fee for this Service is  $ 213.00



8/27/2021

Frank James
Contracted by Nationwide Legal, LLC
901 W. Civic Center Drive, Suite# 190
Santa Ana, CA 92703
(714) 558-2400

Order #:OC69042
Their File Salas v. Statebridge

Copy from re:SearchGA

# EXHIBIT "B"

File & Return To:
**NICOLA HOLDINGS, LLC**
**675 SEMINOLE AVE #301**
**ATLANTA, GA 30307**

SUPERIC
BARROW (

**RECORDED 02/09/2021 11:04 AM    Recpt:002526**
**TAX SALE DEED**
**DEED BOOK 2451  PAGES 139 - 139**
**FILING FEES: $25.00            TRANSFER TAX: $0.00**
**PT61: 007-2021-000396**
Janie J. Jones, Superior Court Clerk, Barrow County, GA

2021 FEB -9 AM 11: 04

JANIE J. JONES, CLERK

**STATE OF GEORGIA**                                    **TAX PARCEL ID:  WN12A  022**
**BARROW COUNTY**                                       **Tuesday, December 1, 2020 FILE#:  85**

---

### BARROW COUNTY TAX DEED

THIS INDENTURE, made this **Tuesday, December 1, 2020**, between the **TAX COMMISSIONER AND EX OFFICIO SHERIFF OF BARROW COUNTY**, as GRANTOR, and **NICOLA HOLDINGS, LLC** as GRANTEE.

WITNESSETH THAT, WHEREAS, in obedience to writ(s) of Fieri Facias issued against **DSV SPV 3 LLC; WN12A 022 / 258 E Fifth Ave W24  002**, the Taxpayer and Defendant in Fieri Facias, for unpaid State, County and School taxes for the year(s) **2018-2019**, said Tax Commissioner and Ex Officio Sheriff did levy the within property as property of **Same as defendant(s) in Fifa**, serve notice, and, after the same being duly advertised agreeable to law, expose the said property within the legal hours of sale, at public outcry in **BARROW COUNTY** on **Tuesday, December 1, 2020**, offering the whole said lot for sale, at which time the GRANTEE herein was the best and highest bidder of said property.

NOW, THEREFORE, in consideration of the sum of  **$40,000.00**, receipt of which is hereby acknowledged, the said GRANTOR, does grant, bargain, sell and convey, so far as the Office of Ex Officio Sheriff authorizes him, unto the said GRANTEE, heirs and assigns, said property to wit:

**All and only that parcel of land designated as Tax Parcel WN12A  022, lying and being in 243rd GMD, City of Winder, Barrow County, Georgia, containing 0.332 acre, more or less, shown in Plat Book 37, Page 176, described in Deed Book 2061, Page 586, the description contained therein being incorporated herein by this reference, known as 258 E. Fifth Avenue.**

TO HAVE AND TO HOLD the said described premises, together with all the rights, members and appurtenances thereof; and, also, all the estate, right, title, interest, claim or demand of the said Taxpayer and Defendant in Fieri Facias, heirs and assigns, legal, equitable or otherwise whatsoever, in and to the same, unto the said GRANTEE, heirs and assigns, subject to the right of redemption as provided by law. Said property is sold subject to all recorded easements, covenants, and right of ways in the said county land records.

IN WITNESS WHEREOF, the said GRANTOR has signed and sealed this deed, the date first above written.

Signed, Sealed and delivered
in the presence of:

_____(Seal)                    _____(Seal)
Unofficial Witness                               Jessica Garrett, as Tax Commissioner and
                                                 Ex Officio Sheriff of BARROW County Georgia

_____
Notary Public

DEBRA BROWN
NOTARY
EXPIRES
**GEORGIA**
February 5, 2022
PUBLIC
BARROW COUNTY

# EXHIBIT "C"

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| MARIE SALAS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 2021CV353274 |
| | ) | |
| STATEBRIDGE COMPANY, LLC, | ) | |
| RVFM 11 SERIES, LLC, | ) | |
| ALAN INVESTMENTS III LLC, | ) | |
| VISION PROPERTY MANAGEMENT, | ) | |
| LLC, and DSV SPV3, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF FILING REMOVAL TO FEDERAL COURT

TO:    Clerk, Fulton County Superior Court
        Lewis R. Slaton Courthouse
        136 Pryor Street, Suite C155
        Atlanta, Georgia 30303

        Marie Salas
        c/o A. Cyclone Covey
        Kneupper & Covey, PC
        4475 Peachtree Lakes Dr.
        Berkeley Lake, GA 30096

**PLEASE TAKE NOTICE**, that, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446,

Defendants Statebridge Company, LLC ("Statebridge") and DSV SPV3, LLC ("DSV"), removed

the above-captioned matter to Federal Court by filing a Notice of Removal (the "Notice of

Removal") on February 6, 2020, in the United States District Court for the Northern District of

Georgia, Atlanta Division.  Pursuant to 28 U.S.C. § 1446(d), "the State court shall proceed no

further unless and until the case is remanded."    A true and correct copy of the Notice of

Removal without attachments is being served with this Notice and is attached hereto as **Exhibit**

**"A"**.

Dated: September 24, 2021                 /s/ Christopher J. Reading
                                                      Dallas R. Ivey
                                                      Georgia Bar No. 385145
                                                      Christopher J. Reading
                                                      Georgia Bar No. 141761

Aldridge Pite, LLP
3575 Piedmont Road NE
Fifteen Piedmont Center, Suite 500
Atlanta, Georgia 30305
(404) 994-7460 (Telephone)
(888) 387-6828 (Fax)
creading@aldridgepite.com

*Counsel for Defendants Statebridge Company, LLC*
*and DSV SPV3, LLC*

## CERTIFICATE OF SERVICE

This is to certify that I have served opposing counsel with a copy of the foregoing

NOTICE OF FILING REMOVAL TO FEDERAL COURT using the Odyssey e-File GA system,

which automatically send email notification of such filing to all attorneys of record.

This the 24th day of September, 2021.

/s/ Christopher J. Reading
Christopher J. Reading
Georgia Bar No. 141761
Dallas R. Ivey
Georgia Bar No. 385145

**ALDRIDGE │PITE, LLP**
Fifteen Piedmont Center
3575 Piedmont Road, N.E.
Suite 500
Atlanta, GA 30305
Phone: (404) 994-7460
Fax: (888) 344-9628
creading@aldridgepite.com