IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARIE SALAS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO.: |
| v. | : | 1:21-CV-3959-SDG-JCF |
| | : | |
| STATEBRIDGE COMPANY, LLC, | : | |
| RVFM 11 SERIES LLC, ALAN | : | |
| INVESTMENTS III LLC, VISION | : | |
| PROPERTY MANAGEMENT, LLC, and | : | |
| DSV SPV3 LLC, | : | |
| | : | |
| Defendants. | : | |

## NON-FINAL REPORT and RECOMMENDATION

This case is before the Court on the Motion to Dismiss Complaint filed by

Defendants Statebridge Company, LLC and DSV SPV3, LLC (Doc. 10), in which

they seek dismissal of Plaintiff's First Amended Complaint (Doc. 6); and Plaintiff's

Motion For Default Judgment against Defendants Vision Property Management,

LLC, RVFM 11 Series, LLC, and Alan Investments III, LLC (Doc. 20). For the

reasons discussed below, it is **RECOMMENDED** that Defendants' motion to

dismiss be **GRANTED IN PART AND DENIED IN PART** and that Plaintiff's

motion for default judgment be **DENIED WITHOUT PREJUDICE**.

**Procedural History**

On August 17, 2021, Plaintiff filed a Complaint in the Superior Court of Fulton County, Georgia against Statebridge Company, LLC ("Statebridge"), RVFM 11 Series LLC ("RVFM"), Alan Investments III LLC ("Alan Investments"), Vision Property Management, LLC ("VPM"), and DSV SPV3 LLC ("DSV"). (Doc. 1-1 at 5-39). Plaintiff asserted claims against Defendants arising from a Residential Lease With Option To Purchase Agreement executed by Plaintiff and RFVM on September 1, 2014. (*See* Doc. 1 at 30-36).  On September 24, 2021, Defendants Statebridge and DSV removed the action to this Court (Doc. 1), and they moved to dismiss Plaintiff's Complaint on October 1, 2021 (Doc. 2).

In response, Plaintiff filed a First Amended Complaint (Doc. 6) against Statebridge, RVFM, Alan Investments, VPM, and DSV in which she asserts the following claims: breach of contract claim (First Cause of Action); equitable rescission of contract (Second Cause of Action); fraud and conspiracy to commit fraud (Third Cause of Action); violation of Georgia's Fair Business Practices Act (Fourth Cause of Action); action to pierce the corporate veil/alter ego liability concerning the "Vision Defendants," i.e., Vision Property Management, RVFM, Alan Investments, and DSV (*see* Doc. 6-1 at 2 n.1) (Fifth Cause of Action); and violations of the Fair Debt Collection Practices Act "(FDCPA") against Statebridge (Sixth Cause of Action).

On October 27, 2021, Defendants Statebridge and DSV filed a motion to dismiss Plaintiff's Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim on which relief may be granted. (Doc. 10). Plaintiff responded (Doc. 16), and Defendants replied (Doc. 18). On November 10, 2021, Plaintiff moved for the Clerk's entry of default against Defendants RVFM, Alan Investments, and VPM for their failure to respond to the complaint (Doc. 17), and the Clerk entered default on November 12, 2021.[1] Plaintiff then moved for default judgment against RVFM, Alan Investments, and VPM on December 14, 2021. (Doc. 20). Defendants Statebridge and DSV filed a response in opposition to that motion on the grounds that it is premature (Doc. 21), and Plaintiff replied to that response (Doc. 22). With briefing on the parties' motions complete, the undersigned now considers their merits.

## **Factual Allegations**[2]

---

[1] The docket contains a second entry of default as to those Defendants on December 28, 2021.

[2] When analyzing a motion to dismiss, courts may consider the face of a complaint and documents attached thereto. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Therefore, the Court can consider the documents attached to the Plaintiff's Amended Complaint, including the Contract at issue (Doc. 6-1). Any reference to page numbers in an exhibit to the Complaint is a reference to the pagination assigned by the Court's CM/ECF system. In deciding a motion to dismiss, courts may consider certain documents outside the complaint without converting the motion into one for summary judgment, including documents of which a court can take judicial notice. Courts can take judicial notice of public

On September 1, 2014, Plaintiff as lessee and RVFM as lessor entered into a "Residential Lease With Option To Purchase Agreement" ("the Contract" or "the Agreement") concerning the residential lease of property at 258 East 5th Avenue, Winder, Georgia 30680 in Barrow County ("the Property"). (Doc. 6 ¶ 61; Doc. 6-1 at 2-12). Under the Contract, RVFM was to lease the Property to Plaintiff for a term of 84 months, beginning September 1, 2014. (Doc. 6-1 at 2). The amount to be paid at the signing of the agreement was $2,000.00 as an option consideration, $508.00 as the first month's lease payment, $80.00 for real estate taxes, plus $35.00 for Casualty and General Liability Insurance, for a total amount of $2,623.00. (*Id.*). All subsequent monthly payments of $623.00 were due on or before the first day of each month, beginning on October 1, 2014 "until the term of this agreement has been fulfilled[.]" (*Id.*). The Contract provided, "This agreement expires on the last calendar day of **AUGUST, 2021**" ("the Contract Expiration Date"). (*Id.*). The Contract further provided that $36.91 of each monthly lease payment and the $2000 option consideration paid by Plaintiff "shall be credited towards the purchase price of the premises for the extent of this agreement and shall be considered as non-refundable escrow towards the **PURCHASE PRICE**." (*Id.*). The purchase price of the Property was $59,000.00 "to be satisfied on or before the expiration of this

---

records and consider them at any stage of a proceeding, so the Court has considered the deeds attached to Defendants' motion to dismiss (*see* Docs. 10-2 through 10-4).

agreement," should Plaintiff choose to exercise her right to purchase as described in

the Lease, i.e.:

Upon the expiration of the term of this agreement or before, the LESSEE(s) shall have three options, to-wit:

1.   **OPTION TO CONVERT TO SELLER FINANCING:** LESSEE(s) may, if all the requirements and covenants of this agreement have been fulfilled, either upon the expiration of this agreement, or upon the time the total credit(s) paid towards the **PURCHASE PRICE** reaches the amount of 30% of the **PURCHASE PRICE**, whichever comes first, this lease shall convert to a Seller Financed Contract. This conversion shall be documented by a separate agreement. The **PURCHASE PRICE** as set forth in the instrument documenting the conversion to Seller Financing shall be equivalent to the difference of the **PURCHASE PRICE** listed in this agreement minus any/all credit(s) paid towards said **PURCHASE PRICE**.

2.   **OPTION TO PURCHASE PREMISES:** LESSEE(s) may, on or before the expiration of this agreement, choose to purchase the above referenced premises for the remainder of the **PURCHASE PRICE** as described above with all credits paid included. Fulfillment of the **PURCHASE PRICE** by the LESSEE(s) shall be treated as a **CASH SALE**, at which time the LESSOR shall provide the LESSEE(s) with a good and sufficient deed, clear of all encumbrances, with exceptions to any/all encumbrances caused by the action or inaction, whether direct or indirect, of the LESSEE(s), and transfer title of the premises from the LESSOR to the LESSEE(s). This **CASH SALE** shall be documented by a separate instrument.

3.   **OPTION TO FORFEIT LEASE:** LESSEE(s) may, on or before the expiration of this agreement, by mutual agreement between LESSOR and LESSEE(s), as evidenced in writing, choose to forfeit their rights to the premises described herein and vacate the premises and all appurtenances within FIVE (5) days of the determined expiration of this agreement. Should the LESSEE(s) choose to forfeit this agreement, all personal property and belongings shall be vacated within FIVE (5) days of the determined expiration of this agreement. Should the LESSEE(s) choose to vacate the premises, any and all improvements that have been built into the property, including but not limited to any/all built in appliances, shall remain with the property and become considered forfeit.

(*Id*. at 2-3). RVFM sent Plaintiff a letter with enclosed "documents pertaining to our Agreement," which instructed her to sign them in the presence of a notary and send the documents to RVFM with certified funds of $2,000.00 for the option consideration, plus $623.00 for the first monthly payment. (Doc. 6-1 at 11). The letter also advised Plaintiff that "[t]he check for the initial payment and all future payments should be made payable to: **VISION PROPERTY MANAGEMENT, LLC**" and provided the address to send the payments. (*Id*.).

On October 27, 2015, RVFM transferred the Property to Alan Investments. (Doc. 6 ¶ 73; Doc. 10-2). Plaintiff was never notified that RVFM transferred the Property to Alan Investments, and she had no contact with RVFM or Alan Investments about this transfer. (Doc. 6 ¶ 78). On July 31, 2017, Alan Investments transferred the Property to DSV. (Doc. 6 ¶ 79; Doc. 10-4). Plaintiff was never notified that Alan Investments transferred the Property to DSV, and she had no contact with Alan Investments or DSV about this transfer. (Doc. 6 ¶ 84).

In May 2018, Plaintiff suffered thousands of dollars' worth of damage to the Property after a tree fell on her house during a severe storm. (*Id*. ¶ 91). Plaintiff contacted VPM for assistance in filing an insurance claim on the Property as a result of the damage that was caused by the tree. (*Id*. at 93). VPM refused to share any insurance information with Plaintiff and told her that the damage would not be covered by any insurance policy. (*Id*. ¶ 94). VPM also told Plaintiff it would not

assist her in submitting an insurance claim and that she would be responsible for repairing the damage herself. (*Id*. ¶ 94). Plaintiff repaired the damage to the Property herself and received no assistance from any Defendant. (*Id*. ¶ 95).

During 2018 and 2019, RVFM and its successors failed to make the required tax payments on the Property, so the Barrow County Tax Commissioner put the Property into tax foreclosure, and Nicola Holdings, LLC ("Nicola") purchased it at a tax sale on December 1, 2020. (Doc. 6 ¶¶ 96-97; Doc. 10-4). In spite of Nicola's purchase of the Property via tax foreclosure, DSV continued to lease the Property to Plaintiff and collect payments from her through VPM and then Statebridge, which began serving as DSV's agent for purposes of the Lease after VPM ceased being the agent around March 2021. (Doc. 6 ¶¶ 87-88, 98). After Statebridge took over from VPM, Plaintiff continued to make her payments under the Lease. (Doc. 6 ¶ 89). When Statebridge took over as agent for DSV for purposes of the Lease, Statebridge falsely represented to Plaintiff that DSV owned the Property and threatened to evict Plaintiff despite the fact that DSV no longer had legal title to the Property. (*Id*. ¶ 99). Defendants have taken no action to redeem the Property from the tax foreclosure sale, and Nicola still had title to the Property as of October 12, 2021 when Plaintiff filed her Amended Complaint. (*Id*. ¶ 100). Plaintiff "made the final payment required by the Agreement on or around October 1, 2021." (*Id*. ¶ 90). RVFM and its successors have refused to provide Plaintiff seller financing, and she is unable to

obtain traditional mortgage financing, "as no bank is willing to lend money to her because she is attempting to purchase a property that is no longer legally owned by the seller." (*Id.* ¶ 101). As of the filing of Plaintiff's Amended Complaint on October 12, 2021, she continued to reside at the Property, but she risks being evicted from the Property by Nicola if RVFM and its successors continue to refuse to provide her seller financing or DSV continues to refuse to redeem the Property from the tax foreclosure sale. (*Id.* ¶ 102).

## Defendants' Motion To Dismiss (Doc. 10)

Defendants Statebridge and DSV (collectively "Defendants") argue that all of Plaintiff's asserted against them in Plaintiff's First Amended Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted. (Doc. 10).

## I.    Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id*. at 679.

To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (explaining that "[t]o survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed" (internal quotation omitted)).

## II.   Plaintiff's Claims

### A.   Breach Of Contract (First Cause Of Action)

"Under Georgia law, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Anderson v. Deutsche Bank Nat'l Trust Co.*, No. 1:11-cv-4091-TWT-ECS, 2012 U.S. Dist. LEXIS 122130, at *14 (N.D. Ga. Aug. 6, 2012) (quotation omitted). To state a claim for breach of contract, a plaintiff must allege a particular contractual provision that the defendant violated. *Brooks v. Branch Banking & Trust Co.*, 107 F.Supp.3d 1290, 1295-96 (N.D. Ga. May 28, 2015) (citations omitted).

Plaintiff alleges that DSV "accepted the contractual obligations of Defendants RVFM 11 Series and Alan Investments III under the Agreement when it accepted the transfer of the deed" (Doc. 6 ¶ 105), which occurred on July 31, 2017 (*id*. ¶ 79; Doc. 10-4). She further alleges that she "fully performed under the Agreement and has made all the required payments and otherwise satisfied all the requirements and covenants that were imposed on her by the Agreement." (*Id*. ¶ 107). Plaintiff alleges that RVFM, Alan Investments, and DSV "breached the Agreement with [her] when they failed to (A) maintain the required insurance on the Property, (B) make the required property tax payments on the Property, and (C) provide Ms. Salas seller financing." (*Id*. ¶ 108).

Defendants argue that Plaintiff's breach of contract claim against DSV should be dismissed because: (1) "[t]he Complaint fails to allege facts showing an assignment of the Contract to DSV, and Plaintiff attempts to impute liability to DSV

under the Contract based solely on its deed to the Property"; (2) "the Complaint fails to allege facts showing that Plaintiff satisfied all conditions precedent under the Contract" for obtaining seller financing, and she did not allege that she exercised the option for seller financing; (3) "Plaintiff's insurance dispute is not supported by the contract"; and (4) Plaintiff has failed to allege that she suffered damages as a result of the failure to make required property tax payments. (Doc. 10-1 at 9).

### 1.     Assignment Of Contract To DSV

The Quit Claim Deed transferring title of the Property from Alan Investments to DSV on July 31, 2017 is silent with respect to the Contract at issue. (Doc. 10-3). Plaintiff contends, however, that her assertion that the Contract was assigned to DSV does not rest solely on the Deed, but instead, she points to her allegations in the Amended Complaint that DSV "accepted the contractual obligations . . . under the Agreement when it accepted the transfer of the deed"; DSV was "obligated to comply with the contractual obligations of the Agreement"; DSV was "liable in the event that the Agreement was breached"; and her allegations that DSV "collected [her] payments under the Agreement and otherwise received its benefits." (Doc. 16 at 3-8; *see also* Doc. 6 ¶¶ 80, 86-90, 105-06). The undersigned finds that Plaintiff has plausibly alleged that the Contract was assigned to DSV.

### 2.     Breach of Seller Financing Provision

11

The Contract provides that "[u]pon the expiration of the term of this agreement or before," Plaintiff (as lessee) had the option to convert to seller financing "if all the requirements and covenants have been fulfilled, either upon the expiration of this agreement, or upon the time the total credit(s) paid towards the purchase prices reaches the amount of 30% of the purchase prices, whichever comes first[.]" (Doc. 6-1 at 2). Plaintiff alleges that RVFM and its successors (including DSV) breached this provision by not providing seller financing at the expiration of the Contract. (Doc. 6 ¶¶ 117-23). DSV argues that this claim fails because Plaintiff has not satisfied the condition precedent for obtaining seller financing, i.e., the payment of all payments due under the Contract by the expiration of the Contract. (Doc. 10-1 at 5-6).

O.C.G.A. § 13-3-4 provides that "[a] condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." "Under Rule 9(c), a plaintiff may 'allege generally that conditions precedent have occurred or been performed,' but if the defendant wants to deny the occurrence or performance of a condition precedent, he 'must do so with particularity.' " *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1323 (N.D. Ga. 2014) (quoting Fed. R. Civ. P. 9(c)). "Such denials, however, 'may be raised in a motion to dismiss (rather than an answer) as long as they meet 9(c)'s particularity requirement.' " *Id*. (quoting *Bloodworth v. Colvin*, 17 F. Supp. 3d 1245, 1253 (N.D.

Ga. 2014)). "And once made, the burden of proving that the conditions precedent have been satisfied falls on the plaintiff." *Id.*

The September 1, 2014 Contract states that the Property was leased to Plaintiff for a term of 84 months; that Plaintiff was to make all monthly payments on the 1st day of each month; and that "[t]his agreement expires on the last calendar day of **AUGUST, 2021**," i.e., August 31, 2021. (Doc. 6-1 at 2). The seller financing option states that the lessee (Plaintiff) shall have that option and "this lease shall convert to a Seller Financed Contract "[u]pon the expiration of the agreement or before," i.e., August 31, 2021 or before, "*if all the requirements and covenants of this agreement has been fulfilled*, either upon the expiration of this agreement, or upon the time the total credit(s) paid towards the purchase price reaches the amount of 30% of the purchase price, whichever comes first[.]" (Doc. 6-1 at 2 (emphasis added)). The undersigned finds that the fulfillment of "all the requirements and covenants of this agreement" was a condition precedent to the conversion of the lease to a seller financed contract. *See Ralls*, 27 F. Supp. 3d at 1323-24 (explaining that "[p]arties can create conditions precedent 'by language such as "on condition that," "if" and "provided," or by explicit statements that future events are to be construed as conditions precedent' " (quoting *Choate Constr. Co. v. Ideal Elec. Contractors, Inc.*, 246 Ga. App. 626, 541 S.E.2d 435, 438 (Ga. Ct. App. 2000)).

Plaintiff has not alleged that the credits she paid reached the amount of 30 percent of the $59,900.00 purchase price at any point on or before the expiration of the Contract, i.e., August 31, 2021. Nor has she alleged that she made all payments under the Contract, i.e., fulfilled "all the requirements and covenants of this agreement" upon the expiration of the Contract, i.e., August 31, 2021. Instead, she alleges that "[t]he Agreement expired on October 1, 2021" (Doc. 6 ¶ 122); she "made the final payment required by the Agreement on or around October 1, 2021" and "[t]his satisfied the remaining requirements and covenants that were imposed on her by the Agreement, and [she] had fully performed under the Agreement at this point" (*id*. at ¶ 90); and Plaintiff "fully performed under the Agreement and has made all required payments and otherwise satisfied all the requirements and covenants that were imposed on her by the Agreement" (*id*. ¶ 107).

Plaintiff argues in response to Defendants' motion that her allegation that she "fully performed under the Agreement and has made all required payments and otherwise satisfied all the requirements and covenants that were imposed on her by the Agreement" (Doc. 6 ¶ 107) "is all that the Federal Rules of Civil Procedure require to plead compliance with a condition precedent." (Doc. 16 at 3 (citing FED. R. CIV. P. 9(c)). But Defendants have denied that assertion with particularity in their motion to dismiss, so Plaintiff bears the burden of alleging facts that plausibly demonstrate that she satisfied the condition precedent. Plaintiff asserts that her

allegation that she made the final payment on October 1, 2021 is sufficient because she also alleged that the Agreement expired on October 1, 2021, "so she made the payments as required." *Id*. at 3-4). Ordinarily, a court must accept the facts in the complaint as true when considering a motion to dismiss; however, if those facts are general and conclusory, and contradicted by facts presented in an exhibit, then the exhibits govern. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("It is the law in this Circuit that 'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.' ") (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007)); *see also Dynott v. Nationstar Mortg., LLC*, No. 1:13–cv–1474–WSD, 2013 U.S. Dist. LEXIS 186089, at *10 (N.D. Ga. Dec. 18, 2013) ("[T]he Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control.") (citing *Griffin*, 496 F.3d at 1205–06); *see also Lane v. Wells Fargo Home Mortg.*, Civil Action No. 1:10–CV–2385–RWS, 2010 U.S. Dist. LEXIS 129041, at *5 (N.D. Ga. Dec. 7, 2010) ("While the Court is compelled to accept the facts in the Complaint as true in considering a motion to dismiss, those alleged facts can be trumped by contradictory facts presented in an exhibit or attachment to the pleadings.") (citing *Indulgence Yacht Charters Ltd. v. Ardell Inc.*, No. 08–60739, 2008 WL 4346749, at *4 (S.D. Fla. Sept. 16, 2008)).

Here, the Contract that Plaintiff attached to her Amended Complaint states that "[t]his agreement expires on the last calendar day of **AUGUST, 2021**," i.e., August 31, 2021. (Doc. 6-1 at 2 (emphasis in original)). Thus, Plaintiff's statement in her Amended Complaint that the "Agreement expired on October 1, 2021" is contradicted by the terms of the Contract attached to her complaint and is insufficient to allege that she satisfied the requirements of the Contract by making her final payment on October 1, 2021. She has thus failed to allege that she met the condition precedent for the seller financing option upon the expiration of the Contract because her allegations show that "all of the requirements and covenants of this agreement" had not been fulfilled "upon the expiration of the agreement," which was August 31, 2021 as she alleges that she did not make final payment until October 1, 2021. Nor has she alleged that she met the alternative condition precedent for the seller financing option, i.e., that she had paid 30% of the purchase price on or before the expiration of the Contract.  (Doc. 6-1 at 2).

Because Plaintiff's allegations and the Contract attached to her Amended Complaint show that she did not meet the condition precedent for exercising the seller financing option because she did not make all payments due under the Contract by the expiration of the Contract, it is **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's breach of contract claim premised on an alleged breach of the seller financing provision be **GRANTED**.

16

3.      __Breach Of Insurance Provisions__

Plaintiff alleges that the Contract "provided that Defendant RVFM 11 Series and it successors would properly escrow $35 of [Plaintiff's monthly payment for casualty and general liability insurance," and RVFM and its successors "were required to maintain such insurance on the Property," but "[o]n information and belief, the Vision Defendants," i.e., Vision Property Management, RVFM, Alan Investments, and DSV (Doc. 6-1 at 2 n.1), "never purchased any casualty and general liability insurance for the Property." (Doc. 6-1 ¶¶ 92, 109, 112). Plaintiff alleges that "[a]round May 2018, [she] suffered thousands of dollars' worth of damage to the Property after a tree fell on her house during a severe storm"; she "contacted Defendant Vision Property Management for assistance in filing an insurance claim on the Property as a result of damage that was caused by the tree"; VPM "refused to share any insurance information with [her] and told her that the damage would not be covered by any insurance policy" and "it would not assist her in submitting an insurance claim and that she would be responsible for repairing the damage herself"; and Plaintiff "subsequently repaired the damage to the Property herself and received no assistance from any of the Vision Defendants," which include DSV. (*Id*. ¶¶ 91, 93-94). Plaintiff alleges that "[t]he failure of the Vision Defendants to purchase the required insurance for the Property breached the Agreement, and the failure of the Vision Defendants to permit [Plaintiff] to file an insurance claim for the damage to

the Property was a breach of the implied warranty of good faith and fair dealing that is implied by Georgia law." (*Id*. ¶ 113).

Defendants argue that Plaintiff's breach of contract claim based on the Vision Defendants' failure to maintain insurance on the Property fails to state a claim because her "allegation regarding insurance coverage is conclusory and is not supported by any of Plaintiff's factual allegations supporting her breach of contract claim," and her claim "grossly oversimplifies any contractual obligation DSV may have had concerning insurance on the Property." (Doc. 10-1 at 7). Defendants point to the following Contract provision concerning insurance:

> The lessee(s) will pay for Casualty and General liability insurance as part of their monthly payment. This fee is a Casualty and General Liability Insurance Policy and is not a replacement for renters insurance or other appropriate insurance to be obtained by the Lessee(s). This policy only covers the Lessor's liability in this property. Without renters insurance or other appropriate insurance, the Lessee will still be responsible for damage or loss of personal belongings.

(Doc. 10-1 at 7; *see also* Doc. 6-1 at 5). Defendants contend that Plaintiff's allegations "conflict with the contractual provisions that make clear any insurance policies are for the Lessor's benefit, not Plaintiff's. Further, as a non-party to any insurance contract, Plaintiff would have no standing to file an insurance claim for her own benefit." (Doc. 10-1 at 8). "Rather," Defendant argues, "as the Contract noted, Plaintiff had the option of purchasing additional insurance coverage for her benefit, which she apparently opted to not pursue. Simply, there was no contractual

obligation that states a minimum level of insurance coverage that defendants were required to purchase, and even if there was, that policy would not benefit the lessee under the language of the contract." (*Id*.).

Plaintiff responds that Defendants have selectively presented portions of the Contract to support its contention that Plaintiff has failed to state a claim with respect to the insurance provisions, and they "ignore the operative portions of this provision that are directly relevant" to Plaintiff's claim. (Doc. 16 at 4-5). Although Plaintiff's claim involves storm damage to the house and the resulting repairs she made (Doc. 6-1 ¶¶ 91-95, 109-113), Defendants cite only the provisions of the Contract concerning renters insurance for "damage or loss of personal belongings." (Doc. 10-1 at 7; *see also* Doc. 6-1 at 5). Immediately below the cited paragraph, the Contract sets forth several paragraphs concerning the parties' obligations if the Property is damaged. (*See* Doc. 6-1 at 5). Those sections require the lessee to notify the lessor "immediately in the event of catastrophic damage to the property," defined as damage requiring over $5,000 to repair." (*Id*.). The Contract further sets forth the obligations of the lessee to repair or reconstruct the property in the event of damage to it as well as obligations of the lessor to apply insurance proceeds toward that repair or reconstruction (*id*.), none of which Defendant acknowledges or addresses. The undersigned finds that Plaintiff has plausibly stated a breach of contract claim for the Vision Defendants, including DSV, based on their alleged failure to obtain

casualty and general insurance on the Property, and their alleged failure to pursue and apply insurance proceeds for the casualty loss to the Property as alleged in the Amended Complaint. It is therefore **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's breach of contract claim against DSV based on its breach of the insurance provisions be **DENIED**.

### 4.   <u>Failure To Pay Property Taxes</u>

Plaintiff alleges that the Vision Defendants, including DSV, breached the Contract by collecting $80 per month from Plaintiff for real estate taxes, and then failing to pay the Property taxes, resulting in the Property being sold to Nicola Holdings, LLC at a tax foreclosure sale on December 1, 2020. (Doc. 6-1 ¶ 96, 97, 114, 115; Doc. 10-4). Defendants argue that that claim fails "because she suffered no damages." (Doc. 10-1 at 8). Defendants point out that "Plaintiff admits that she continues to reside in the Property, hence her leasehold interest in the Property has been unaffected by the tax sale." (Doc. 10-1 at 8; *see also* Doc. 6-1 ¶ 102). Defendants also point out that at the time Plaintiff filed her Amended Complaint, i.e., October 12, 2021, "DSV [wa]s still within the twelve (12) months period in which to redeem the Property from the tax sale purchaser." (Doc. 10-1 at 8 (citing O.C.G.A. § 48-4-40 *et seq*.)).[3]

---

[3] O.C.G.A. § 48-4-40 provides, "Whenever any real property is sold under or by virtue of an execution issued for the collection of state, county, municipal, or school taxes or for special assessments, the defendant in fi. fa. or any person having any

In her Amended Complaint, Plaintiff alleges that she "remains at the Property for the time being," but she "risks being evicted by Nicola Holdings, LLC in the event that Defendant RVFM 11 Series and its successors continue to refuse her seller financing as required by the Agreement or Defendant DSV SPV3 continues to refuse to redeem the property from the tax foreclosure sale." (Doc. 6-1 ¶ 102). She also alleges that she "has been unable to obtain traditional mortgage financing, as no bank is willing to lend money to her because she is attempting to purchase a property that is no longer legally owned by the seller." (*Id.* ¶ 101). Plaintiff argues that she "in in limbo, does not have title to the Property, and therefore risks eviction by the property owner." (Doc. 16 at 7). Under Georgia law, "[d]amages are given as compensation for the injury sustained as a result of the breach of a contract." O.C.G.A. § 13-6-1. Plaintiff has not alleged that she has been damaged by Defendants' alleged failure to pay the property taxes; she has apparently been allowed to live in the subject Property since the tax sale. Moreover, she has not alleged that she sought third-party financing "on or before the expiration" of the Contract in order to exercise the "option to purchase premises" (Doc. 6-1 at 2)[4] but was denied such financing due to

---

right, title, or interest in or lien upon such property may redeem the property from the sale by the payment of the amount required for redemption, as fixed and provided in Code Section 48-4-42: (1) At any time within 12 months from the date of the sale; and (2) At any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45."

[4] Although the Contract provided that all requirements under the Contract had to be met in order to convert to seller financing, the second option to purchase premises

DSV's lack of title from its alleged failure to pay taxes. It is therefore **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's breach of contract claim against DSV based on the alleged failure to pay property taxes be **GRANTED**.

The undersigned recognizes that given the time that has passed since Plaintiff filed her Amended Complaint and the expiration of the statutory deadline to redeem the Property, *see* O.C.G.A. § 48-4-40, Plaintiff might have been evicted from the subject Property since then with possible resulting damages. Moreover, if she did seek financing prior to the contract expiration date which she was denied due to DSV's lack of title, she arguably could demonstrate damages from the alleged breach. Given that the undersigned is recommending that Defendants' motion to dismiss be denied as to most of Plaintiff's other claims, it is **RECOMMENDED** that dismissal of Plaintiff's breach of contract claim based on the failure to pay property taxes be **WITHOUT PREJUDICE** with instruction to Plaintiff to amend her complaint to add allegations concerning her damages from Defendants' alleged failure to pay property taxes.

B.    <u>**Equitable Rescission Of Contract**</u>

---

provides that the lessee "may, on or before the expiration of this agreement, choose to purchase the above referenced premises for the remainder of the purchase price as described above will all credits paid included." (Doc. 6-1 at 2).

Plaintiff alleges that the Contract "is void against public policy and per-se unconscionable because it was consummated in violation of the Georgia Residential Mortgage Act, the Georgia Fair Lending Act, the Federal Truth in Lending Act, the Federal Real Estate Settlement Procedures Act, and the Georgia Fair Business Practices Act." (Doc. 6-1 ¶ 125). Plaintiff also asserts that "[i]n the event that this Court finds that this contract is not void against public policy or per-se unconscionable and Defendants [RVFM, Alan Investments, and DSV] claim that their contractual obligation to provide seller financing to [Plaintiff] is indefinite and unenforceable, then this Court should void the contract because a material term of the contract upon which [Plaintiff] relied is impossible. The resulting contract would be substantively unconscionable because it would leave [her] in the impossible position of finding third-party financing that she would not be able to obtain because the purported sellers do not have legal title to the Property." (*Id*. ¶ 126).

Georgia law provides that "[a] contract that is against the policy of the law cannot be enforced. Contracts deemed contrary to public policy include but are not limited to: (1) contracts tending to corrupt legislation or the judiciary; (2) Contracts in general restraint of trade, as distinguished from contracts which restrict certain competitive activities, as provided in Article 4 of this chapter; (3) Contracts to evade or oppose the revenue laws of another country; (4) Wagering contracts; or (5) Contracts of maintenance or champerty." O.C.G.A. § 13-8-2(a)(1)-(5). "Basic

criteria have been set down for the determination of whether a contract is void as against public policy." *Dep't of Transp. v. Brooks*, 254 Ga. 303, 312, 328 S.E.2d 705, 713 (Ga. 1985). " 'A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law.' " *Id*. (quoting *Camp v. Aetna Ins. Co.*, 170 Ga. 46, 50 (Ga. 1929)).

As discussed below, Defendants argue that none of the laws Plaintiff cites in support of her claim for rescission because Plaintiff has failed to allege violations of any of those statutes and/or the relevant statutes of limitation would bar such claims. (Doc. 10-1 at 9-14). In response, Plaintiff argues that Defendants misconstrue her claims and misunderstand the remedy of equitable rescission. (Doc. 16 at 8). She argues that "Defendants misconstrue the First Amended Complaint as making claims directly under the Georgia Residential Mortgage Act, the Georgia Fair Lending Act, the Truth in Lending Act, and the Real Estate Settlement Procedures Act, and Defendants argue that such claims are barred by the relevant statutes of limitations and enforcement provisions." (*Id*.). Defendant asserts that she is not asserting claims directly under these statutes, but instead she "is basing her equitable rescission arguments (in part) on the fact that the Vision Defendants violated those statutes in

their dealings with [Plaintiff], and that such violations rendered the Agreement void because it was against public policy and unconscionable." (*Id*.).

Pretermitting the issue of whether the alleged violations of the cited statutes render the Contract void as against public policy, the undersigned finds that Plaintiff has otherwise stated a claim for rescission of the Contract. In addition to citing the above statutes to support her claim for equitable rescission, Plaintiff also asserts that "this Court should void the contract because a material term of the contract upon which [Plaintiff] relied is impossible. The resulting contract would be substantively unconscionable because it would leave [her] in the impossible position of finding third-party financing that she would not be able to obtain because the purported sellers do not have legal title to the Property." (*Id*. ¶ 126). Defendants did not address that allegation in moving to dismiss this claim. (*See* Doc. 10-1 at 9-14).

"Georgia law allows equitable rescission for nonperformance of a contract: 'A party may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made.' " *Lanier Home Ctr. v. Underwood*, 252 Ga. App. 745, 746, 557 S.E. 2d 76, 78 (Ga. Ct. App. 2001) (quoting O.C.G.A. § 13-4-62)). "The remedy of rescission for nonperformance is appropriate when the breach is so substantial and fundamental as to defeat the object of the contract." *Id*. Here, Plaintiff has adequately alleged (and the Contract shows)

that the object of the Contract was for her to have the option to purchase the Property at issue, but Defendants' alleged failure to pay the property taxes resulted in their loss of title and resulting inability to sell the Property to Plaintiff and "provide the lessee(s) with good and sufficient deed, clear of all encumbrances . . . ." (Doc. 6-2 at 2). Plaintiff has therefore stated a claim for equitable rescission. *See, e.g.*, *Lanier Home*, 557 S.E. 2d at 78-79 (finding that "the failure of the septic tank system made the home inhabitable. The failure goes to the fundamental purpose of the contract. The remedy of rescission was appropriately put before the jury," even where the plaintiffs continued to live in the home).

It is therefore **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's equitable rescission claim (Second Cause of Action) be **DENIED**.

### C.   Fraud And Conspiracy To Commit Fraud (Third Cause Of Action)

Defendants argue that Plaintiff's Third Cause of Action "should be dismissed because the Complaint fails to allege all elements of the claim for fraud and conspiracy against DSV and Statebridge." (Doc. 10-1 at 14).

#### 1.   Fraud

Under Georgia law, a plaintiff alleging a claim for fraud must establish five elements: "(1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff." *Summit Auto. Grp., LLC v. Clark*, 298 Ga. App. 875,

880, 681 S.E.2d 681 (Ga. Ct. App. 2009) (citation and punctuation omitted).   In

addition, FED. R. CIV. P. 9(b) requires that a claim for fraud be pled "with

particularity."   To comply with Rule 9(b), a plaintiff must allege:

> (1) precisely what statements were made in what documents or oral
> representations or what omissions were made, and
> (2) the time and place of each such statement and the person responsible
> for making (or, in the case of omissions, not making) same, and
> (3) the content of such statements and the manner in which they misled
> plaintiff, and
> (4) what the defendants obtained as a consequence of the fraud.

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1310 (11th Cir. 2002).

In other words, "to avoid dismissal, a complaint alleging fraud must plead the 'who,

what, when, where and how' of the alleged fraud."   *Graham v. Mortgage Electronic*

*Registration Systems, Inc.*, Civil Action No. 2:11–CV–00253–RWS, 2012 U.S. Dist.

LEXIS 20704, at *8 (N.D. Ga. Feb. 17, 2012) (citing *Mathis v. Velsicol Chemical*

*Corp.,* 786 F. Supp. 971, 976–77 (N.D. Ga. 1991)).

Plaintiff alleges that VPM "intended to collect [her] tax escrow payments and

keep them for itself and its principals," i.e., RVFM, Alan Investments, and DSV, but

VPM "never intended to make property tax payments for the duration of the

Agreement as required." (Doc. 6 ¶¶ 178-79). Plaintiff further alleges that "by

perpetuating the fraud in this manner, Defendant Vision Property Management

would be able to continue receiving the substantial benefit of the Agreement with

[Plaintiff] on behalf of its principals—namely the tens of thousands of dollars in

payments—while simultaneously not having to expend any money on the Property."
(*Id*.). Plaintiff alleges that prior to entering into the Contract at issue, VPM induced
Plaintiff into entering the Agreement and paying it monthly amounts for property
taxes in reliance on VPM's misrepresentations that it would escrow and pay those
taxes. (*Id*. ¶¶ 181, 184). Plaintiff relied on those misrepresentations, paid $85 a
month to VPM for property taxes, and "did not make such payments" directly to the
taxing authority "because she thought they had already been paid." (Id. ¶ 184).
Plaintiff alleges that when she received notice of the tax foreclosure in October 2020,
she called VPM about the tax notice, and the representative "advised her to hold and
'escrow' all payments she would have otherwise made to Defendant Vision Property
Management until the tax issue was resolved. The representative falsely indicated
that [VPM] would correct the issue and that [Plaintiff] could then pay her escrowed
money without penalty." (Doc. 6 ¶ 186). Plaintiff further alleges that "[a]s a result
of the false statements and reassurances by" VPM, Plaintiff "took no action to
prevent the House from going into tax foreclosure." (*Id*. ¶ 187).

        She further alleges once Statebridge "became the administrator of the
Agreement" on behalf of DSV, which occurred in March 2021 (Doc. 6-1 ¶ 87), its
representatives "repeatedly and falsely told [Plaintiff] that it knew about the tax
issue, the issue was resolved, [Plaintiff] did not need to worry about the tax issue,
and [Plaintiff] needed to continue making her payments." (*Id*. ¶ 188). Plaintiff

describes specific conversations she had with Statebridge representatives, including a May 15, 2021 conversation with Jesus Rosales, a Recovery Specialist at Statebridge, who told Plaintiff on May 15, 2021 "that the tax issue would be handled, but that she needed to continue making her payments under the agreement," yet Rosales took no action to resolve those tax issues. (*Id.* ¶ 190); a July 16, 2021 conversation with Rosales when he "falsely told [Plaintiff] that [Statebridge] had redeemed the tax deed and that [DSV] had legal title to the property" (*id.* ¶ 191); and in a September 29, 2021 email, Senior Closing Specialist Sushma Bagga "falsely told [Plaintiff] that "DSV SPV3, LLC is the current owner of [the Property]" (*id.* ¶ 192). She further alleges that when these representations were made, Nicola "actually held legal title to the Property after purchasing it at the tax foreclosure sale, and, on information and belief, neither [DSV nor Statebridge] had taken any action to attempt to redeem the property from the tax sale," and Statebridge "knew that its clients," including DSV, did not own the property, but continued to collect payments from Plaintiff in spite of this knowledge. (*Id.* ¶¶ 193-94). Plaintiff alleges that she relied on Stockbridge's "repeated false statements by continuing to make monthly payments to it," and because of those false statements, Plaintiff "refrained from investigating how she might go about obtaining clear title to the Property or whether she should continue making monthly payments to [Stockbridge] even after discovering that the Property had been sold at a tax foreclosure sale." (*Id.* ¶ 197).

The undersigned finds that Plaintiff has sufficiently alleged facts that satisfy the elements of a fraud claim under Georgia law, i.e., that DSV's agents VPM and Stockbridge made false representations to Plaintiff; they knew the statements were false and intended for Plaintiff to rely on them; and she did rely on them and was harmed by such reliance. She has also alleged her fraud claim with particularity required by Rule 9(b) as she has described the alleged misrepresentations, and she has identified with sufficient particularity who made the representations and when, the content of the misrepresentations, how Plaintiff was misled by them, and what Defendants obtained as a result of the fraud. It is therefore **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's fraud claim be **DENIED**.

### 2.    <u>Conspiracy To Commit Fraud</u>

"A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *U.S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 443 S.E.2d 833, 835 (Ga. 1994) (internal quotation omitted).  "The law is that 'a conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort . . . . The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.' " *Savannah College of Art & Design v. Sch. of Visual Arts*, 219 Ga. App. 296, 464 S.E.2d 895,

896 (Ga. Ct. App. 1995) (quoting *Cook v. Robinson*, 216 Ga. 328, 116 S.E. 2d 742, 744 (Ga. 1960)).

As discussed above, the undersigned finds that Plaintiff has stated a fraud claim against DSV and Statebridge. The undersigned also finds that Plaintiff has plausibly alleged a combination between the two, and others, to commit fraud against Plaintiff with respect to inducing her to pay monthly amounts for taxes which Defendants did not pay to the taxing authority, resulting in the Property being sold to Nicola, yet Defendants continued to hold themselves out to Plaintiff has holding title to the Property and directing her to send her payments to them. (*See* Doc. 6 ¶¶ 176-97).

### D.   Georgia Fair Business Practices Act (Fourth Cause Of Action)

Plaintiff alleges that Defendants violated the Georgia Fair Business Practices Act by making made false misrepresentations that they "had benefits that they did not have in violation of O.C.G.A. § 10-1-393(b)(5)" and were "also generally unfair and deceptive in violation of O.C.G.A. § 10-1-393(a)." (Doc. 6 ¶¶ 199-205).

The GFBPA is intended "to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce. The [GFBPA] forbids and declares unlawful any unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." *Henderson v. Gandy*, 270 Ga. App. 827, 829 (2004) (citation

31

omitted). "[T]he stated intent of the FBPA is to protect the public from acts and practices which are injurious to consumers, not to provide an additional remedy for private wrongs which do not and could not affect the consuming public generally." *Id.* (quoting *Zeeman v. Black*, 156 Ga. App. 82, 82-83 (Ga. Ct. App. 1980)). "Thus, the scope of the FBPA is limited to acts in the conduct of consumer transactions and consumer acts or practices in trade or commerce." *Id.* (citing *Larson v. Tandy Corp.*, 187 Ga. App. 893, 896 (4) (Ga. Ct. App. 1988)). The Georgia code defines a "consumer transaction" as "the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes," *Id.* at 830 (quoting OCGA § 10-1-392 (a) (3)), and "'trade' and 'commerce'" as

> the advertising, distribution, sale, lease, or offering for distribution, sale, or lease of any goods, services, or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever situate and shall include any trade or commerce directly or indirectly affecting the people of the state.

*Id.* (quoting O.C.G.A. § 10-1-392(a)(9)). "The FBPA, however, does not provide a remedy for actions that do not and could not affect the general consuming public." *Id.* (citing *Morris v. Budd*, 226 Ga. App. 455, 457 (2) (Ga. Ct. App. 1997)). "Consequently, suits brought under the FBPA 'must serve the public interest and implement the purpose of the FBPA — the end to unfair or deceptive acts or practices in the public consumer marketplace.'" *Id.* (citing *Zeeman*, 156 Ga. App. at 84).

Specifically with respect to Defendants DSV and Statebridge, Plaintiff incorporates her allegations in support of her Third Cause of Action (Fraud) and Sixth Cause of Action (FDCPA) and alleges that Statebridge, acting as agent for DSV, "falsely and deceptively told [Plaintiff] that (A) the tax foreclosure issue had been resolved, (B) [Plaintiff] was in danger of eviction if she did not pay outstanding amounts, and (C) [Plaintiff] had previously agreed to a payment plan to which she had not agree[d]." (Doc. 6 ¶ 204). Plaintiff alleges that "[t]hese statements were unfair and deceptive in violation of O.C.G.A. § 10-1-393(a)." (*Id*.). Plaintiff further alleges that "[o]n information and belief, [Statebridge] has made substantially similar representations to other members of the public on behalf of the Vision Defendants throughout the State of Georgia, and these representations have been similarly false when made. Importantly, [Statebridge] has made such false representations as part of its ongoing public business, and the making of such false representations poses a substantial threat to the consumer marketplace." (*Id*. ¶ 205).

Defendants argues that "Plaintiff's Georgia FBPA claim does not satisfy the requirement that a false occurs within the consumer marketplace" because the "alleged communications occurred in the context of a private transaction concerning Plaintiff's performance or non-performance under the Contract, and not in the context of the consumer marketplace." (Doc. 10-1 at 20, 22). Plaintiff responds that she has stated a claim under the GFBPA because she has also brought an FDCPA

claim premised on Statebridge's false representations to Plaintiff (*see* Sixth Cause of Action, Doc. 6 ¶¶ 213-26), and "the Eleventh Circuit and this Court have both found that a debt collector 'necessarily violate[s the G]FBPA when it violate[s] the FDCPA.' " (Doc. 16 at 20 (quoting *Gilmore v. Account Mgmt.*, 357 F. App'x 218, 220 (11th Cir. 2009) and citing *Carlisle v. Nat'l Commer. Servs.*, No. 14-CV-515-TWT-LTW, 2017 U.S. Dist. LEXIS 39954, at *20 (N.D. Ga. Feb. 22, 2017)). Plaintiff correctly points out that Defendants did not address her FDCPA claim in their motion to dismiss. (Doc. 16 at 20).

Magistrate Judge John K. Larkins in this Court addressed this issue in a Report and Recommendation issued in *Leslie v. Afni, Inc.*, No. 1:20-cv-2740-AT-JKL, 2020 U.S. Dist. LEXIS 256359 (N.D. Ga. Dec. 14, 2020). In that case, Judge Larkins noted that the only mention of the GFBPA in the plaintiff's complaint was "little more than a citation to the statute combined with conclusory allegations that Defendant violated it trying to collect a debt from Plaintiff." *Id*. *13. He explained that "[i]n other circumstances, the Court would question whether the claim is supported with sufficient factual information to satisfy" Rule 8, "but the answer to that question here is immaterial, as the Eleventh Circuit has stated in no uncertain terms that 'a violation of the FDCPA constitutes a violation of the GFBPA.' " *Id*. at *14 (quoting *Harris v. Liberty Cmty. Mgmt, Inc.*, 702 F.3d 1298, 1303 (11th Cir. 2012) (citing *1st Nationwide Collection Agency v. Werner*, 288 Ga. App. 457, 459,

654 S.E.2d 428 (Ga. Ct. App. 2007)). Judge Larkins also cited *Gilmore*, 357 F. App'x at 220, and he observed that "courts in this district have regularly held the same." *Id.* (collecting cases). Because the defendant in that case—like Defendants in this case—did not move to dismiss the plaintiff's FDCPA claim, Judge Larkins found that the plaintiff had stated a plausible claim under the GFBPA as well and recommended that the defendant's motion to dismiss that claim be denied. *Id.*[5]

Likewise, based on the authority cited in *Leslie*, the undersigned finds that because Defendants did not move to dismiss Plaintiff's FDCPA, which thus remains unchallenged, Plaintiff has stated a claim under the GFBPA. *See Harris*, 702 F.3d at 1303 ("The GFBPA, which is to be interpreted or construed consistently with the Federal Trade Commission Act . . ., applies to unfair practices in the collection of debts and a violation of the FDCPA constitutes a violation of the GFPBA."); *Gilmore*, 357 F. App'x at 220 (finding that *Werner* "supports the conclusion that Account Management necessarily violated Georgia's FBPA when it violated the FDCPA"); *Werner*, 654 S.E.2d at 431 (finding that "the trial court correctly ruled that Nationwide's violation of the FDCPA also constituted a violation of the FBPA" because "collecting a debt incurred during a consumer transaction could harm the general consuming public if conducted via deceptive acts or practices and clearly

---

[5] The parties in *Leslie* settled the case after the Report and Recommendation was issued. (*See* Docs. 26-28 in Civil Action No. 1:20-CV-2740-AT-JKL).

falls within the parameters of the FBPA," and "a violation of the FDCPA is clearly considered a violation of the [FTC]").

It is therefore **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's GFPBA claim (Fourth Cause Of Action) be **DENIED**.

### E.    Piercing Corporate Veil (Fifth Cause Of Action)

Plaintiff's Fifth Cause of Action is an action to pierce the corporate veil and establish alter ego liability of the Vision Defendants, i.e., VPM, RVFM, Alan Investments, and DSV, and she seeks "[a] determination that each of the Vision Defendants are the alter ego of the other and that they should be jointly and severally liable for the damages they have caused [Plaintiff]." (Doc. 6 ¶ 212). Defendants argues that "Georgia law does not support Plaintiff's veil piercing theory" because her "claims in this regard are entirely threadbare and plainly fail to meet the *Iqbal* standard, and "Georgia courts have not recognized horizontal veil piercing, where liability is imputed to one or more corporations owned by the same principal." (Doc. 10-1 at 22, 24).

" 'Georgia courts pierce the corporate veil to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or evade contractual or tort responsibility.' " *Knieper v. Forest Grp. USA, Inc.*, No. 4:15-CV-00222-HLM, 2016 U.S. Dist. LEXIS 190287, at *19 (N.D. Ga. Sept. 12, 2016) (quoting *Paul v. Destito*, 250 Ga.

36

App. 631, 639, 550 S.E.2d 739, 747 (Ga. Ct. App. 2001). " 'The theory applies when there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist.' " *Id.* (quoting *Paul*, 550 S.E.2d at 747). " 'There must be evidence of abuse of the corporate form,' and a plaintiff 'must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control.' " *Id.* at *20 (quoting *Am. Cas. Co. v. Schafer*, 204 Ga. App. 906, 908, 420 S.E.2d 820, 821 (Ga. Ct. App. 1992)). "Those same standards apply to claims that a corporation 'serves as the alter ego' of another entity or its owners." *Id.* "Generally, whether to pierce the corporate veil or to apply the alter ego theory is a factual question." *Id.* at *20-21. " 'A plaintiff must show 'that the corporate arrangement was a sham, used to defeat justice, to perpetuate fraud or to evade statutory, contractual or tort responsibility.' " *Id.* at *21 (quoting *Derbyshire v. United Builders Supplies, Inc.*, 194 Ga. App. 840, 844, 392 S.E.2d 37, 40 (Ga. Ct. App. 1990)).

Plaintiff argues that she has "alleged numerous facts regarding the Vision Defendants that justify the imposition of alter ego liability in this case." (Doc. 16 at 23). She points to her allegations "that the Vision Defendants were all owned and operated by Alex Skrazadek, and that they transferred the Property among themselves as part of their scheme to defraud [her]"; that VPM "controlled the other

Vision Defendants and served as their agents for all purposes of the Agreement";
"that the Vision Defendants failed to maintain separate governance and shared the
same officers and employees, office space, mailing address, and phone number";
and "that the entities were structured in this manner to perpetuate the fraud against
her, and the entities did not functionally exist apart from one another." (*Id.*; *see also*
Doc. 6 ¶¶ 10-15, 63, 73-85, 207-10). The undersigned finds that Plaintiff has
plausibly alleged that the corporate arrangement of the Vision Defendants "was a
sham, used to defeat justice, to perpetuate a fraud or to evade statutory, contractual
or tort responsibility." *Derbyshire*, 392 S.E.2d at 40; *see, e.g.*, *Knieper*, 2016 U.S.
Dist. LEXIS 190287, at *22-23 (finding that plaintiff had plausibly stated an alter
ego claim where the plaintiff alleged that the defendants had the same corporate
director/officer and were "controlled by the same majority shareholder, engage in
the same business from the same location, have commingled their assets, use the
same telephone number, and have the same customers and vendors," and that one of
the defendants "was formed to execute a corporate freeze-out of Plaintiff").

The undersigned also finds no merit to Defendants' contention that "Georgia
courts have not recognized horizontal veil piercing." (Doc. 10-1 at 24). The court in
*Knieper* rejected the same argument, i.e., "that horizontal, sister companies cannot
be each other's alter egos in Georgia." 2016 U.S. Dist. LEXIS 190287, at *23. The
court found the defendants' reliance on *Cobra 4 Enterprises v. Powell-Newman*, 336

Ga. App. 609, 785 S.E.2d 556 (Ga. Ct. App. 2016)—the same case relied on by Defendants here (Doc. 10-1 at 24-25)—to be misplaced, and the court observed that "Georgia courts have not expressly disapproved of the horizonal ego theory and have expressly considered the theory[.]" 2016 U.S. Dist. LEXIS 190287, at *23. The undersigned similarly finds that Plaintiff "has alleged enough facts, at least at the pleading stage, to state a plausible alter ego claim as to" the Vision Defendants. *Id*. at *23-24.

It is therefore **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's piercing the corporate veil/alter ego theory claim (Fifth Cause of Action) be **DENIED**.

### F.    FDCPA (Sixth Cause Of Action)

Plaintiff asserts a claim against Defendant Statebridge for violations of the Fair Debt Collection Practices Act (FDCPA). (Doc. 6 ¶¶ 213-227). Defendants did not address this claim in its motion to dismiss (*see generally* Doc. 10-1), but it requested that "the Court dismiss all claims asserted against Statebridge and DSV in the First Amended Complaint" (*id*. at 1), thus arguably seeking dismissal of Plaintiff's FDCPA claim. Because Defendants did not demonstrate why dismissal of that claim is appropriate, to the extent that Defendants sought dismissal of that claim, it is **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's FDCPA claim be **DENIED**.

## Plaintiff's Motion For Default Judgment (Doc. 20)

Plaintiff moves for default judgment against Defendants VPM, RVFM, and Alan Investments because they have not responded to Plaintiff's complaint and default has been entered against them. (Doc. 20). Plaintiff asserts that "the Complaint adequately pleads facts sufficient to show that the corporate veil should be pierced, and that alter ego liability should be imposed as to each of the Vision Defendants given the extraordinarily close relationship that exists between them." (Doc. 20-1 at 7-8). Plaintiff also contends that "[t]he Complaint also adequately pleads facts sufficient to show that the Vision Defendants are liable for breaching the LOP Contract with [Plaintiff], committing fraud and conspiracy to commit fraud, and violating the GFBPA, and that [Plaintiff] is entitled to equitable rescission of the LOP Contract[.]" (*Id*. at 8). Plaintiff therefore argues that in light of the well-pleaded allegations, "liability has been established as to" VPM, RVFM, and Alan Investments, and the entry of default judgment against each of these Defendants is warranted as to the extent requested below." (*Id*.). Plaintiff "recognizes that it is premature to ask this Court to enter a default judgment as to many of the above issues given that Defendants DSV SPV3 and Statebridge Company have contested the majority of the facts on which the issues of liability and damages will ultimately rest." (*Id*. at 14). Plaintiff contends, however, that "there is no just reason for this Court to delay in entering judgment against the defaulting Defendants on two issues:

(1) "this Court should enter a default judgment as to the issue of alter ego liability such that each of the defaulting Defendants is found to be an alter ego of the others and will be held jointly and severally liable for anything that any of them are ultimately held liable"; and (2) "this Court should enter a partial judgment as to the issue of the defaulting Defendant's liability for the actions of Defendant DSV SPV3 such that they will be held jointly and severally liable for anything that Defendant DSV SPV3 is ultimately held liable." (*Id*.).

Defendants Statebridge and DSV object to the entry of default judgment on the issues requested by Plaintiff "on the grounds that Plaintiff's request for default judgment is premature. To the extent the Motion seeks any relief that pertains to Defendants, including any claims pertaining to alter ego liability, it should be denied." (Doc. 21 at 1). Defendants point out that Plaintiff "acknowledges that it would be premature to enter default judgment" as to VPM, RVFM, and Alan Investments "as Defendants have contested the factual underpinnings of a majority of her claims," which "is consistent with the well-established precedent that in cases involving more than one defendant, a judgment should not be entered against a defaulting party until the matter has been adjudicated with regard to all defendants." (*Id*. at 2). Defendants contend that "Plaintiff offers no plausible basis why this Court should stray from this general principle that judgment should not be entered against a defaulting party on an issue of joint liability until a trial on the merits against the

41

remaining defendants." (*Id*. at 2-3). Defendants also point out that Rule 54(b) provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay." FED. R. CIV. P. 54(b). (Doc. 21 at 3).

In reply, Plaintiff contends that delaying entry of default judgment will prejudice her based on the concern that the defaulting defendants will delay seeking to set aside the entry of default and make an appearance in this case "when there will be a tactical advantage from doing so," pointing to a case in the Eastern District of Michigan where these defendants apparently employed this strategy. (Doc. 22 at 3-6). She also argues that the entry of default judgment poses no legitimate risk of an inconsistent judgment. (*Id*. at 6-9).

The undersigned agrees with Defendants that the entry of default judgment on the issues requested by Plaintiff would be premature. " 'Courts have interpreted [Rule 54(b)] to mean that [w]hen a default is entered against one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting a default judgment until the trial of the action on the merits against the remaining defendants.' " *Mrfs. Alliance Ins. Co. v. Brencorp, Inc.*, No. 4:15-CV-0140-HLM, 2016 U.S. Dist. LEXIS 121213, at *4 (N.D. Ga. Mar. 22, 2016) (quoting *North Pointe Ins. Co. v. Global Roofing & Sheet Metal, Inc.*, No. 6:12-cv-476-Orl-31TBS, 2012 U.S. Dist. LEXIS 161598, *11 (M.D. Fla. Sept. 4, 2012)). "This delay is

particularly appropriate where the entry of default judgment as to one defendant may result in inconsistent judgments with regard to the others." *Progressive Mountain Ins. Co. v. Anderson*, No. CV 113-213, 2014 U.S. Dist. LEXIS 169414, at *3-4 (S.D. Ga. Dec. 8, 2014).

The undersigned finds "that a just reason for delay exists." *Mfrs. Alliance*, 2016 U.S. Dist. LEXIS 121213, at *6. " 'Over a hundred years ago, the Supreme Court held that, if a plaintiff alleges that two defendants are jointly and severally liable, a default judgment against one defendant cannot be entered before the liability of the non-defaulting judgment is determined.' " *Id.* (quoting *Bank of the Ozarks v. Arco Cmty. Outreach Coalition, Inc.*, No. CV 212-017, 2013 U.S. Dist. LEXIS 5740, at *5 (S.D. Ga. Jan. 15, 2013) (citing *Frow v. De La Vega*, 83 U.S. 552, 554 (1872))). "The reason being that two different judgments against joint defendants would be inconsistent and illogical." *Bank of the Ozarks*, 2013 U.S. Dist. LEXIS 5740, at *5 (citing *Frow*, 83 U.S. at 554). Here, Plaintiff alleges that Defendants are jointly and severally liable and seeks to pierce the corporate veil between the Vision Defendants, including both defaulting and non-defaulting defendants, and establish alter ego liability of those defendants. Under these circumstances, the undersigned finds a just reason to delay entry of default judgment against the defaulting Defendants as Plaintiff requests, until Plaintiff's claims against the non-defaulting Defendants are resolved, whether through dispositive motions, settlement, or trial. It

is therefore **RECOMMENDED** that Plaintiff's motion for default judgment against Defendants VPM, RVFM, and Alan Investments be **DENIED AS PREMATURE** without prejudice to her right to renew the motion when her claims against the non-defaulting Defendants are resolved.

The undersigned is mindful of Plaintiff's concerns about the potential for the defaulting Defendants to delay seeking to set aside the entry of default. The Court will consider that situation if it arises, but the Court notes that setting aside a default is not automatic. The Court is permitted to set aside an entry of default for "good cause." FED. R. CIV. P. 55(c). Courts consider the following factors when determining whether good cause exists to set aside an entry of default: (1) whether the default was culpable or willful; (2) whether setting it aside would prejudice the non-defaulting party; and (3) whether the party in default has a meritorious defense. *J&J Sports Prods., Inc. v. Crown Ventures Enters., Inc.*, No. 1:13-CV-1991-RWS, 2013 U.S. Dist. LEXIS 178671, at *3 (N.D. Ga. Dec. 20, 2013). Thus, there is no guarantee that the defaulting Defendants would be successful in such an attempt, particularly the longer this case progresses, or if Plaintiff is able to prove the relationship between the non-defaulting Defendants and the defaulting Defendants she describes in her complaint or support her allegations made in her reply about the defaulting Defendants' actions in other cases. But those are not issues the Court need

resolve at this point because the defaulting Defendants have not sought to set aside the default.

## Summary

For the reasons stated above, it is **RECOMMENDED** that Defendants' Motion To Dismiss (Doc. 10) be **GRANTED IN PART AND DENIED IN PART**. Specifically, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** on Plaintiff's breach of contract claim based on failure to provide seller financing (part of First Cause of Action). It is **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's breach of contract claim based on failure to pay property taxes (part of First Cause of Action) be **GRANTED** and that claim be **DISMISSED WITHOUT PREJUDICE** and that Plaintiff be directed to replead that claim to describe her damages, as discussed above. It is **RECOMMENDED** that Defendants' motion to dismiss be **DENIED** as to the following claims: Plaintiff's breach of contract claim based on failure to obtain and provide insurance proceeds (part of First Cause of Action); equitable rescission claim (Second Cause of Action); fraud and conspiracy to commit fraud (Third Cause of Action); Georgia Fair Business Practices Claim (Fourth Cause of Action); action to pierce the corporate veil/alter ego liability (Fifth Cause of Action); and the Fair Debt Collection Practices Act (Sixth Cause of Action).

It is further **RECOMMENDED** that Plaintiff's Motion For Default Judgment (Doc. 20) be **DENIED WITHOUT PREJUDICE** to her right to renew her motion after her claims against the non-defaulting Defendants are resolved.

**IT IS SO REPORTED AND RECOMMENDED** this <u>19th</u> day of <u>July</u>, 2022.

<u>/s/ J. Clay Fuller</u>
J. Clay Fuller
United States Magistrate Judge